No. 14-16405

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**David Tompkins,**
on behalf of himself and others
similarly situated,
*Plaintiffs/Appellants*,

v.

**23andMe, Inc.,**
*Defendant/Respondent.*

---

On Appeal from the United States District Court for the
Northern District of California, San Jose Division
D.C. No. 5:13-cv-05682-LHK (and consolidated cases)
Honorable Lucy H. Koh, Judge

# Appellants' Opening Brief

Gayle M. Blatt (Bar No. 122048)
*gmb@cglaw.com*
Jeremy Robinson (Bar No. 188325)
*jrobinson@cglaw.com*
Jason C. Evans (Bar No. 272932)
*jevans@cglaw.com*
**CASEY, GERRY, SCHENK,
FRANCAVILLA,
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
Fax: (619) 544-9232

Mark Ankcorn (Bar No. 166871)
*mark@ankcorn.com*
**ANKCORN LAW FIRM, PC**
11622 El Camino Real, Suite 100
San Diego, California 92130
(619) 870-0600 phone
(619) 684-3541 fax

*Attorneys for Appellants David Tompkins, et al.*

# TABLE OF CONTENTS

**Page(s)**

Introduction ................................................................................. 1

Jurisdictional Statement ............................................................ 3

Statement of Issues .................................................................... 4

Statement of the Case ................................................................ 4

    1.    23andMe's misleading marketing of its direct-to-consumer DNA testing kit violated FDA regulations .............. 4

    2.    Plaintiffs filed suit against 23andMe for statutory violations and common law counts ......................................... 7

    3.    23andMe's website "Terms of Service" has an unconscionable arbitration clause placed at the very end ........ 9

    4.    The District Court erroneously granted 23andMe's petition to compel arbitration ................................................ 12

Summary of Argument ............................................................ 17

Argument .................................................................................. 18

    1.    Standard of Review ............................................................. 18

    2.    The arbitration clause in the Terms of Service is both procedurally and substantively unconscionable and should not be enforced ......................................................... 19

2.1    The Terms of Service is procedurally unconscionable because it is a contract of adhesion and the arbitration clause is hidden at the very end ............................................................. 21

2.2    The Terms of Service is substantively unconscionable because it imposes tremendous costs and risks on plaintiffs and because it is one-sided in favor of 23andMe ..................................................... 25

    2.2.1    The cost and fee shifting provision is unconscionable ............................................... 27

    2.2.2    The venue selection provision is unconscionable ................................................ 32

    2.2.3    The one-sidedness of the arbitration clause is unconscionable ........................................... 37

    2.2.4    The shortened statute of limitations and the unilateral ability to modify the Terms of Service are unconscionable ........ 41

3.    The arbitration clause cannot be severed ................................ 47

Conclusion .................................................................. 48

Certificate of Compliance ....................................................... 49

Statement of Related Cases ...................................................... 50

Appendix ................................................................... 51

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Al-Safin v. Circuit City Stores, Inc.*
   394 F.3d 1254 (9th Cir. 2005) ............................................................ 30

*Aral v. Earthlink, Inc.*
   134 Cal.App.4th 544 (2005) ........................................................ 34, 35

*Armendariz v. Foundation Health PsychareServs.*
   24 Cal.4th 83 (2000) ................................................19, 20, 27, 37, 40, 48

*AT&T Mobility LLC v. Concepcion*
   131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).................................... 19, 46, 47

*Balen v. Holland Am. Line Inc.*
   583 F.3d 647 (9th Cir.2009) ................................................................19

*Bolter v. Superior Court*
   87 Cal.App.4th 900 (2001)...................................................................35

*Buckeye Check Cashing, Inc. v. Cardegna*
   546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)................. 44, 45

*Carmona v. Lincoln Millennium Car Wash, Inc.*
   226 Cal.App.4th 74 (2014) .................................................24, 29, 30, 37

*Chavarria v. Ralphs Grocery Co.*
   733 F.3d 916 (9th Cir. 2013) ...............................................................39

*Circuit City Stores, Inc. v. Adams*
   279 F.3d 889 (9th Cir. 2002)................................................21, 28, 41, 42

*Comb v. PayPal, Inc.*
   218 F.Supp.2d 1165 (N.D.Cal. 2002) ...................................................34

*Comedy Club, Inc. v. Improv West Assocs.*
  553 F.3d 1277 (9th Cir. 2009)..............................................................38

*Cooper v. MRM Inv. Co.*
  367 F.3d 493 (6th Cir. 2004) .............................................................. 31

*Douglas v. U.S. Dist. Court for Cent. Dist. of California*
  495 F.3d 1062 (9th Cir. 2007) ............................................................43

*Ferguson v. Countrywide Credit Industries, Inc.*
  298 F.3d 778 (9th Cir.2002)................................................................ 21

*Fitz v. NCR Corp.*
  118 Cal.App.4th 702 (2004) .........................................................39, 48

*Gourley v. Yellow Transp., LLC*
  178 F.Supp.2d 1196 (D. Colo. 2001) ................................................... 31

*Green Tree Financial Corp.-Alabama v. Randolph*
  531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ............................3, 4

*Gutierrez v. Autowest, Inc.*
  114 Cal.App.4th 77 (2003)........................................................... 23, 18

*Harper v. Ultimo*
  113 Cal.App.4th 1402 (2003) ......................................................24, 25

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*
  893 F.Supp.2d 1058 (D.Nev. 2012) ................................................... 42

*Ingle v. Circuit City Stores, Inc.*
  328 F.3d 1165 (9th Cir.2003)................................................... 21, 22, 41

*Interactive Flight Technologies, Inc. v. Swiss Air Transport Co., Ltd.*
  249 F.3d 1177 (9th Cir. 2001) ............................................................. 4

*Kramer v. Toyota Motor Corp.*
   705 F.3d 1122 (9th Cir.2013) ............................................................... 18

*Lhotka v. Geographic Expeditions, Inc.*
   181 Cal.App.4th 816 (2010) .......................................................... 47, 48

*Little v. Auto Stiegler, Inc.*
   29 Cal.4th 1064 (2003) ....................................................................... 26

*Martinez v. Master Prot. Corp.*
   118 Cal.App.4th 107 (2004) .............................................................. 22

*Matanuska Val Farmers Cooperating Ass'n v. Monaghan*
   188 F.2d 906 (9th Cir.1951) ................................................................ 43

*Mercuro v. Superior Court*
   96 Cal.App.4th 167 (2002) ................................................................. 25

*Milenbach v. Comm'r*
   318 F.3d 924 (9th Cir.2003) ............................................................... 19

*Murray v. United Food & Commercial Workers Int'l Union*
   289 F.3d 297 (4th Cir. 2002) .............................................................. 31

*Nagrampa v. MailCoups, Inc.*
   469 F.3d 1257 (9th Cir. 2006) ...................................... 33, 38, 39, 45, 48

*Newton v. American Debt Services, Inc.*
   549 F.Appx. 692 (9th Cir. 2013) .............................................. 33, 45, 48

*Nguyen v. Barnes & Noble Inc.*
   763 F.2d 1171 (9th Cir. 2014) ............................................................ 13

*Nino v. Jewelry Exch., Inc.*
   609 F.3d 191 (3d Cir. 2010) ............................................................... 31

*O'Hare v. Municipal Resource Consultants*
107 Cal.App.4th 274 (2003)................................................................ 40

*Oracle AM., Inc. v. Myriad Group, A.G.*
724 F.3d 1069 (9th Cir. 2013) ...........................................................13

*Parada v. Superior Court*
176 Cal.App.4th 1554 (2009) ............................................................ 28

*Patterson v. ITT Consumer Financial Corp.*
14 Cal.App.4th 1659 (1993) .............................................................23

*Perdue v. Crocker National Bank*
38 Cal.3d 913 (1985) ........................................................................ 26

*Phillips v. Sprint PCS*
209 Cal.App.4th 758 (2012) .............................................................45

*Pinedo v. Premium Tobacco Stores, Inc.*
85 Cal.App.4th 774 (2000)................................................................34

*Pinnacle Museum Tower Assn.*
55 Cal.4th 223 (2012) ...................................................................... 26

*Plaskett v. Bechtel Int'l, Inc.*
243 F.Supp.2d 334 (D.V.I. 2003) ...................................................... 31

*Pokorny v. Quixtar, Inc.*
601 F.3d 987 (9th Cir. 2010) ....................................................... 27, 39

*Polimaster ltd. v. RAE Sys., Inc.*
623 F.3d 832 (9th Cir. 2010) ..................................................15, 32, 33

*Rent-A-Center, West, Inc. v. Jackson*
561 U.S. 63, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ..........................45

*Roldan v. Callahan & Blaine*
   219 Cal.App.4th 87 (2013)................................................................. 22

*Sabia v. Orange County Metro Realty, Inc.*
   227 Cal.App.4th 11 (2014)......................................................20, 26, 48

*Samaniego v. Empire Today LLC*
   205 Cal.App.4th 1138 (2012) ....................................... 23, 29, 30, 40, 42

*Sanchez v. Valencia Holding Co.*
   200 Cal.App.4th 11, *review granted and opinion superseded*,
   272 P.3d 976 (Cal. 2012), Cal. Supreme Court Case No. S199119. ...... 26

*Sonic-Calabasas A, Inc. v. Moreno*
   57 Cal.4th 1109 (2013).........................................................3, 26, 27, 30

*Sparks v. Vista Del Mar Child & Family Services*
   207 Cal.App.4th 1511 (2012) .................................................. 24, 27, 43

*Stirlen v. Supercuts, Inc.*
   51 Cal.App.4th 1519 (1997).......................................................... 21, 26

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
   559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).........................36

*Ting v. AT&T*
   319 F.3d 1126 (9th Cir. 2003) ............................................................ 28

*Trivedi v. Curexo Technology Corp.*
   189 Cal.App.4th 387 (2010).............................................................. 24

*Union Pac. R.R. v. Chi., Milwaukee, St. Paul & Pac. R.R.*
   549 F.2d 114 (9th Cir.1976) ..............................................................43

*Valueselling Associates, LLC v. Temp*
   520 F. App'x 593 (9th Cir. 2013).........................................................38

## <u>Statutes and Other Authorities</u>

Business & Professions Code section 17200 .................................................. 8

Business & Professions Code section 17500 .................................................. 8

California Civil Code section 1670.5 .................................................. 30, 33

California Civil Code section 1670.5(a) .................................................. 12

9 U.S.C. section 2 .................................................. 19, 33

9 U.S.C. section 16(a)(3) .................................................. 3

21 U.S.C. section 360c(a)(C)(ii) .................................................. 5

28 U.S.C. section 1291 .................................................. 3

28 U.S.C. section 1332(d) .................................................. 3

Federal Rules of Appellate Procedure, Rule 4(a)(1) .................................................. 4

Federal Rules of Appellate Procedure, Rule 32(a)(7)(B) .................................................. 49

## Introduction

This is a group of consolidated class actions against 23andMe, Inc., a company that aggressively markets direct-to-consumer genetic tests. Consumers across the country have sued 23andMe, alleging that it duped them into buying the genetic tests by making false or misleading claims about their predictive capabilities. Fed up with 23andMe's lack of cooperation, the FDA eventually stepped in and forced 23andMe to stop making those claims.

Based on an unconscionable arbitration clause crammed in a paragraph called "Miscellaneous"—itself stuffed at the very end of an 18 page adhesion contract 23andMe foists on consumers only *after* they give up their money—23andMe moved to compel arbitration. The district court blasted the arbitration clause as "unfair" and permeated with "substantial procedural unconscionability." But, misreading the governing law, the district court dismissed the considerable substantive unconscionability and ordered the case to arbitration. That conclusion is error and should be reversed.

23andMe has packed the arbitration clause with onerous and one-sided terms, effectively insulating itself from all consumer claims. Consider that a consumer wishing to pursue arbitration against 23andMe for its deceptive business practices must: (1) travel to 23andMe's home turf (San Francisco) at the plaintiff's own expense regardless of where in the world the plaintiff lives; (2) provide and pay for an interpreter if necessary; and (3) risk being stuck not only with the substantial costs of the arbitration but also with 23andMe's attorneys' fees. (Excerpts of Record ("ER") 52, ¶ 28(b).) All over a $99 product. (ER 251.)

In addition, 23andMe's "Terms of Service" frees 23andMe from having to arbitrate claims close to its heart (intellectual property disputes and infringement claims), restricts all consumer claims to a one year statute of limitations, and gives 23andMe the unilateral right to amend the arbitration clause (and any other part of the Terms) at any time, without additional consideration, effective on posting the changes to 23andMe's website.

All of this adds up to high levels of substantive unconscionability. These terms are oppressive and unfair to consumers to the point that

consumers are denied any remedy. No one will bear that kind of expense and risk for a $99 refund. (ER 132, ¶ 8, 134, ¶8, 135, ¶ 4.) And, since "it has long been the proper role of courts … to ensure that the terms of a bargain are not unreasonably harsh, oppressive, or one-sided," *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1143 (2013), numerous courts applying California law—the law chosen by 23andMe to govern the Terms of Service—have found similarly unconscionable clauses unenforceable. *See,* Section 2.2, *infra*. The district court's order compelling arbitration should be reversed.

## Jurisdictional Statement

The district court had jurisdiction over these cases under 28 U.S.C. § 1332(d) because the amount in controversy is alleged to exceed $5 million and some plaintiffs are residents of states other than California and Delaware, 23andMe's principal place of business and state of incorporation, respectively. (ER 197, ¶ 17.)

This Court has jurisdiction under 9 U.S.C. § 16(a)(3) and 28 U.S.C. § 1291. The district court's order granting the petition to compel arbitration

3

and dismissing the case with prejudice is a final appealable order. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), *Interactive Flight Technologies, Inc. v. Swiss Air Transport Co., Ltd.*, 249 F.3d 1177, 1179 (9th Cir. 2001). The district court's order was entered on June 25, 2014. (ER 1-31.) The Notice of Appeal in this case was filed on July 23, 2014 (ER 32-34), and so is timely under Rule 4(a)(1) of the Federal Rules of Appellate Procedure.

## Statement of Issues

Did the district court err in finding the arbitration clause in the Terms of Service was not substantively unconscionable, given that the agreement imposed onerous and one-sided conditions on consumers?

## Statement of the Case

**1.    23andMe's misleading marketing of its direct-to-consumer DNA testing kit violated FDA regulations**

23andMe is a purveyor of direct-to-consumer genetic testing services, i.e., it entices people to buy genetic tests without consulting a medical professional. 23andMe calls its service the "Personal Genome

4

Service" or "PGS." (ER 1.) Up until late 2013, 23andMe vigorously touted

various "health" benefits of the PGS, saying such things as:

- "Learn hundreds of things about your health. Using your
  DNA information, 23andMe helps you know more about your
  health so you can take an active role in managing it."

- "Plan for the future. Find out if your children are at risk for
  inherited conditions, so you can plan for the health of your
  family."

- "Health tools - Document your family health history, track
  inherited conditions, and share the knowledge."

- "Drug response - Arm your doctor with information on how
  you might respond to certain medications." (ER 199-200, 225-
  226, 276-277.)

It is easy to see how people would be lured by promises to be able to

"[f]ind out if your children are at risk for inherited conditions" and "[a]rm

your doctor with information on how you might respond to certain

medications." But, what 23andMe did not tell customers is that the PGS is

a "Class III" device requiring premarket approval from the federal Food

and Drug Administration, 21 USC § 360c(a)(C)(ii), and 23andMe never obtained that approval. After numerous fruitless interactions with 23andMe, the FDA finally sent 23andMe a letter in November 2013 demanding it stop making health-related claims about the PGS until it got regulatory approval. (ER 117-119.) The FDA commented that "[m]ost of the intended uses for PGS listed on your website, a list that has grown over time, are medical device uses under section 201(h) of the FD&C Act. Most of these uses have not been classified and thus require premarket approval or de novo classification, as FDA has explained to you *on numerous occasions*." (ER 117 (italics added).)

The FDA then continued: "Some of the uses for which PGS is intended are particularly concerning … because of the potential health consequences that could result from false positive or false negative assessments for high-risk indications such as these." *Id*. The FDA's concern is justified. "The risk of serious injury or death is known to be high when patients are either non-compliant or not properly dosed; combined with the risk that a direct-to-consumer test result may be used by a patient to self-manage, serious concerns are raised if test results are not adequately

6

understood by patients or if incorrect test results are reported." (ER 117-118.)

After expressing frustration at 23andMe's lack of cooperation even after "many interactions" with the FDA, the Agency said: "we still do not have any assurance that the firm has analytically or clinically validated the PGS for its intended uses, which have expanded from the uses that the firm identified in its submissions." (ER 118.) "Instead, we have become aware that you have initiated new marketing campaigns, including television commercials that, together with an increasing list of indications, show that you plan to expand the PGS's uses and consumer base without obtaining marketing authorization from FDA." *Id*.

The FDA thus commanded that 23andMe "immediately discontinue marketing the PGS until such time as it receives FDA marketing authorization for the device." (ER 118.) 23andMe did not stop selling the PGS, but has dropped all health-related claims associated with it. (ER 2.)

**2.     Plaintiffs filed suit against 23andMe for statutory violations and common law counts**

Understandably upset by the revelation that 23andMe had not obtained FDA approval or even provided the FDA with any clinical data showing the PGS was reliable, plaintiffs filed a number of nationwide class actions against 23andMe over its misrepresentations about the PGS. (ER 194-391.) The cases were all consolidated by agreement in the Northern District of California, San Jose Division.

All plaintiffs allege that 23andMe misleadingly marketed and sold the PGS to consumers knowing that it lacked regulatory approval to do so, and knowing that its marketing claims were not supported by clinical data. (*See, e.g.*, ER 197-205, ¶¶ 18-45 (*Tompkins* Complaint), 223-231, ¶¶ 9-45 (*Aeron* First Amended Complaint), 367-381, ¶¶ 19-38 (*Martin* Complaint).) Each complaint has similar iterations of causes of action for unfair and fraudulent practices in violation of Business & Professions Code §§ 17200 *et seq*., unlawful business practices in violation of Business & Professions Code §§ 17200 *et seq*., false advertisement in violation of Business & Professions Code §§ 17500 *et seq*., violations of the Consumer Legal Remedies Act, breach of warranty, unjust enrichment, deceit by concealment, and

negligent misrepresentation[1]. (ER 194-391.)

**3.     23andMe's website "Terms of Service" has an unconscionable arbitration clause placed at the very end**

Consumers who bought the PGS went through a multi-step process. The first step was buying the DNA testing kit online at 23andMe's website, http://www.23andme.com[2]. (ER 4, 124.) As of the date of the FDA's final letter, the kit retailed for $99. (ER 251.) The only opportunity for a full refund was a 60 minute cancellation window after purchase. (ER 4, 115, ¶ 12.) Partial refunds were available for another 30 days provided customers had not used the kit. (ER 4, 115, ¶ 12, 129.)

When customers bought the DNA kit, they were not required to agree to, or even look at, 23andMe's Terms of Service. (ER 4, 114, ¶10.) Instead, the Terms were only available via a hyperlink at the bottom of some of 23andMe's website pages. (ER 4.) Nevertheless, the Terms purport to

---

[1] The *Newland* complaint (EOR 294-310) alleges causes of action based on Illinois law but they mirror in substance the remaining plaintiffs' claims under California law.

[2] On its own initiative, the district court took judicial notice of the contents of 23andMe's website as of November 20, 2013 via the Internet Archive, http://archive.org. (ER 2, fn. 1.)

bind anyone who uses 23andMe's "Services," even if that person is completely unaware of the Terms. (ER 37, ¶ 2.)

After buying the DNA kit, and in order to receive their test results, customers had to create an online account with 23andMe and register the kit. (ER 4-5, 114-115, ¶ 10.) It was only at this point that customers were required to click on a box stating they consented to the Terms in order to continue. *Id*. 23andMe's dialog box requiring assent to the Terms drew attention to three points: (1) 23andMe disclaimed it was providing any medical advice; (2) 23andMe warned customers that they may get information they did not want to know; and (3) 23andMe encouraged customers to read its privacy policy. (ER 5, 142.) 23andMe did not mention arbitration.

Instead, the arbitration clause was crammed at the very end of the Terms of Service. It appeared in a subsection of a paragraph captioned "Miscellaneous" found at the very end of an 18 page document spilling over with legalese and disclaimers. (ER 36-53.) In drafting the clause, 23andMe once again declined the opportunity to alert consumers to it since, unlike with other provisions 23andMe presumably deems important

10

(mostly privacy and intellectual property issues, and various disclaimers from 23andMe), 23andMe did not bold or italicize the clause and nothing is done to draw reader attention to it. *Id.* The clause reads:

> **Applicable law and arbitration:** Except for any disputes relating to intellectual property rights, obligations, or any infringement claims, any disputes with 23andMe arising out of or relating to the Agreement ("**Disputes**") shall be governed by California law regardless of your country of origin or where you access 23andMe, and notwithstanding of any conflicts of law principles and the United Nations Convention for the International Sale of Goods. Any Disputes shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association, to be held in San Francisco, California, in English, with a written decision stating legal reasoning issued by the arbitrator(s) at either party's request, and with arbitration costs and reasonable documented attorney's costs of both parties to be borne by the party that ultimately loses. Either party may obtain injunctive relief (preliminary or permanent) and orders to compel arbitration or enforce arbitral awards in any court of competent jurisdiction. (ER 52, ¶ 28(b) (emphasis in original).)

Although the clause refers to the "Agreement," that is not a defined term in the Terms of Service. So while the arbitration clause says it relates to "any disputes with 23andMe *arising out of or relating to the Agreement*," it is not entirely clear what the "Agreement" is[3]. In addition, paragraphs 26

---

[3] Perhaps the clause is referencing the previous subsection that states the Terms of Service "constitute the entire agreement between you and

and 28(h) of the Terms of Service give 23andMe the unilateral right to amend the Terms at any time, effective on the changes being posted to 23andMe's website. (ER 52-53.) The Terms also provide for a shortened one-year statute of limitations, and state that while customers may not assign any rights under the Terms, 23andMe may freely do so. (ER 53, ¶ 28(d).)

As would be expected given the location and inconspicuousness of the arbitration language, and the way in which the Terms of Service are forced on customers, many plaintiffs never saw the arbitration clause, much less read or understood it. (ER 132, ¶¶ 5-7, 134, ¶¶ 5-6.) They had no idea they were supposedly giving up the right to bring a court case against 23andMe for false advertising and deceptive business practices. *Id*.

4. **The District Court erroneously granted 23andMe's petition to compel arbitration**

Following consolidation of the cases, 23andMe filed an "omnibus" petition to compel arbitration in all cases. 23andMe devoted a good portion

---

23andMe…" (ER 52, ¶28(a)), but that is far from clear, and there is no reason 23andMe could not simply have said "disputes relating to the Terms of Service" if that is what it meant.

of the petition to arguing the threshold issues of arbitrability were matters for the arbitrator to decide and not the court. Plaintiffs opposed the motion, contending there was no valid agreement to arbitrate and the arbitration clause was both procedurally and substantively unconscionable.

The district court analyzed each issue separately. The court first determined that the initial purchase of the DNA testing kit from 23andMe did not result in a binding agreement to arbitrate because the customer did not have to agree to the Terms of Service at that time[4]. (ER 8-11.) Indeed, the court commented that "23andMe's practice of obscuring terms of service until after purchase—and for a potentially indefinite time—is *unfair*, and that a better practice would be to show or require acknowledgement of such terms at the point of sale." (ER 11 (italics added).) Nevertheless, the court found that later setting up an account with 23andMe was enough to bind customers to the Terms. (ER 11-14.) So, even though "23andMe's website provided minimal notice of the [Terms] to customers," (ER 21, 24, 25) and those customers likely would not have even known of the Terms' existence (including the arbitration clause) until it was

---

[4] That holding is consistent with this Court's recent decision in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

too late to return the kit, the court found the Terms valid. *Id.*

The district court next analyzed the issue of "arbitrability," i.e., whether the court or the arbitrator decides issues of contract enforcement. (ER 14-23.) Relying partly on this Court's decision in *Oracle AM., Inc. v. Myriad Group, A.G.,* 724 F.3d 1069 (9th Cir. 2013), the court found that 23andMe's mere incorporation of the "rules and auspices of the American Arbitration Association" did not show "that the parties clearly and unmistakably intended to delegate arbitrability" to an arbitrator. (ER 23.) The court observed that 23andMe's language "forces the consumer to comprehend the 'rules and auspices' of the AAA; locate those rules independently; determine that AAA's Commercial Rules apply by operation of Rule R-1(a); and then specifically identify Rule R-7(a) to learn of that delegation provision." (ER 21.) Accordingly, the court decided the arbitrability issues. (ER 14-23.)

Turning to the unconscionability argument, the court had little trouble recognizing the oppressive level of procedural unconscionability. The Terms of Service was a contract of adhesion with an arbitration clause buried "at the very end of the [Terms] as a subparagraph to the final section

titled 'Miscellaneous.'" (ER 25.) Said the court: "This opaque arrangement undermines 23andMe's characterization of the arbitration provision as 'not hidden or difficult to understand.'" *Id.* The district court pointed to the "substantial surprise and oppression" in that "[c]ustomers received minimal notice of the arbitration provision, and only after handing over their money." (ER 25.) The district court concluded this amounted to "substantial procedural unconscionability." (ER 27.)

But, in spite of this, and contrary to established precedent, the court then held that "the terms are not so unduly harsh or one-sided that they are substantively unconscionable." (ER 30.) The court reached this result by parsing out a few discrete provisions (and ignoring a few others), finding that in isolation, they were not substantively unconscionable.

First, citing *Polimaster ltd. v. RAE Sys., Inc.* 623 F.3d 832, 837 (9th Cir. 2010), the court ruled that 23andMe's choice of its own home turf, San Francisco, as the only venue for arbitration was not unconscionable because "[t]he Ninth Circuit has held that requiring arbitration 'at the location of a defendant's principal place of business' is 'presumptively enforceable.'" (ER 27.) But that is an incorrect reading of the law in consumer arbitration

15

cases.

Second, the court brushed aside the one-sidedness of the arbitration clause, finding that 23andMe's exclusion of intellectual property claims was reasonable because the Terms supposedly give customers a limited license in their genetic information. (ER 29.) Thus, according to the court, "consumers may avail themselves of the carve out for intellectual property disputes." *Id*. Again, however, this was error. That "carve out" is meaningless to consumers and, as shown in Section 2.2.3, *infra*,, one-sided clauses of this sort are often invalidated.

Finally, the district court discounted 23andMe's onerous cost and attorney fee shifting provision because, for the first time in its Reply brief, 23andMe represented it had "waived any right to recover attorneys' fees and costs at the request of the AAA." (ER 29.) True or not, that is irrelevant. Far from eliminating unconscionability, it only shows that even AAA—the organization 23andMe chose to run its arbitrations—viewed the provision as oppressive. Further, as discussed below, a party trying to enforce an unconscionable contract cannot strategically decide to waive clauses it demanded to be put into the agreement in the first place because

they are so unfair to the other side that the agreement otherwise would be void. *See* Section 2.2.2, *infra*. The claimed waiver is also incompatible with the integration and anti-waiver clauses in the Terms. (ER 52-53, ¶28(a), (c).)

## **Summary of Argument**

The arbitration clause imposed by 23andMe on consumers is both procedurally and substantively unconscionable. The district court correctly affirmed the significant procedural unconscionability inherent in the adhesive Terms of Service that is 18 pages long and is presented on a take-it-or-leave-it basis to consumers who have already paid 23andMe. That the arbitration clause is hidden at the very end of the Terms in a paragraph with other "miscellaneous" provisions, and that the clause incorporates, but does not provide, the "rules and auspices of the AAA," only makes it worse. Indeed, the court went so far as to declare the arrangement "unfair."

The arbitration clause is also substantively unconscionable, and the district court erred in finding otherwise. First, the clause has a cost and fee shifting provision that courts almost universally declare unconscionable. 23andMe tried to avoid that issue by claiming to waive the provision at the

urging of AAA, but that does not figure into the unconscionability analysis, which looks at the contract *at the time it was made*. Second, the clause mandates San Francisco as the only proper venue for arbitration, effectively denying consumers outside of that city of any remedy at all given the small stakes of the consumer claims. The district court relied on an incomplete reading of the law in erroneously finding that provision enforceable. Third, the clause exempts 23andMe from having to bring intellectual property or infringement claims in arbitration, thus betraying 23andMe's true opinion of the arbitral forum and making the clause unfairly one-sided. Fourth, and finally, other clauses in the Terms of Service shorten the statute of limitations and give 23andMe the unilateral right to modify the Terms at any time.

There is a lengthy list of reported cases where the courts have found similar terms substantively unconscionable. The result should be the same here. And since the clause is permeated with unconscionability, severance is not appropriate.

## Argument

### 1.    Standard of Review

This Court reviews de novo district court decisions about the arbitrability of claims. *Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1126 (9th Cir.2013). Underlying factual findings are reviewed for clear error (*Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir.2009)), while "[t]he interpretation and meaning of contract provisions" are reviewed de novo (*Milenbach v. Comm'r*, 318 F.3d 924, 930 (9th Cir.2003)).

### 2.    The arbitration clause in the Terms of Service is both procedurally and substantively unconscionable and should not be enforced

Section 2 of the Federal Arbitration Act permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability …" *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011).

Under California law, which all parties agree applies here by virtue of 23andMe's choice of law clause (ER 52, ¶ 28(b)), if "the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract." Cal.Civ. Code, § 1670.5, subd. (a). Unconscionability "has both a 'procedural' and a 'substantive' element." *Armendariz v. Foundation Health PsychareServs.*, 24 Cal.4th 83, 114 (2000). These elements operate on a sliding scale—"the greater the presence of one component of unconscionability, the less of the other there needs to be in order to determine that a contract is not enforceable." *Sabia v. Orange County Metro Realty, Inc.*, 227 Cal.App.4th 11, 25 (2014).

Here, the district court sharply veered off the proper path by not finding the arbitration clause substantively unconscionable, and certainly erred in holding there was not even the minimal level of substantive unconscionability present necessary to defeat 23andMe's effort to relegate the matter to arbitration. 23andMe's arbitration clause is replete with terms this Court and others have repeatedly declared to be substantively unconscionable. Adding to that, other parts of the Terms of Service give

20

23andMe the unilateral right to modify the Terms, including, presumably, the arbitration clause, at any time, and unfairly shorten the applicable statute of limitations. Both are factors courts have used to find arbitration agreements substantively unconscionable.

### 2.1 The Terms of Service are procedurally unconscionable because it is a contract of adhesion and the arbitration clause is hidden in the very end

Even a quick glance at the "Terms of Service" reveals the procedural unconscionability. The contract is rife with both oppression and surprise in unhealthy doses.

A contract is oppressive if inequality of bargaining power prevents the weaker party—here, the plaintiffs—from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1171 (9th Cir.2003), citing *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1532 (1997). In this case, that point is, or at least should be, undisputed. The Terms of Service were forced on customers of 23andMe with no opportunity for negotiation. (ER 25.) Customers could only either accept the Terms as written or decline them in

their entirety, at which point they lost some or all of their money. *Id*.

This sort of take-it-or-leave-it adhesion contract is the hallmark of procedural oppression. *See, e.g. Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002) (adhesion contract procedurally unconscionable); *Ferguson v. Countrywide Credit Industries, Inc.,* 298 F.3d 778, 783 (9th Cir.2002) (same); *Martinez v. Master Prot. Corp.,* 118 Cal.App.4th 107 (2004) ("take it or leave it" arbitration agreement procedurally unconscionable.") (citations omitted).

The other component of procedural unconscionability, "surprise," "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Ingle* at 1171 (internal quotation marks omitted). Again, there is no question the arbitration agreement here "is hidden in the prolix printed form drafted by" 23andMe, "the party seeking to enforce the disputed terms."

The Terms of Service is a verbose document packed full of legal disclaimers that is foisted on customers who have already purchased 23andMe's DNA test kit. Those customers must agree to the entire "Terms

of Service" before the account will be activated, and, by means of what can be charitably described as a "legal fiction[]," are presumed to have read and understood the entire 18 pages. *Roldan v. Callahan & Blaine*, 219 Cal.App.4th 87, 94 (2013). The arbitration language itself appears only in a subsection of the very final paragraph, captioned "Miscellaneous," and is not set up in a way that draws in the reader's attention. On the contrary, only someone who was willing to comb through the entire document before completing an on line sign-up would potentially see this language. As the district court aptly noted, "[t]his opaque arrangement undermines 23andMe's characterization of the arbitration provision as 'not hidden or difficult to understand.'" (ER 25.)

Courts have found procedural unconscionability from much less. *See, e.g., Patterson v. ITT Consumer Financial Corp.,* 14 Cal.App.4th 1659, 1664 (1993) (procedural unconscionability where arbitration agreement is "'hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.'"); *Samaniego v. Empire Today LLC*, 205 Cal.App.4th 1138, 1146 (2012) (agreement "was comprised of 11 pages of densely worded, single-spaced text printed in small typeface. The arbitration clause is the

penultimate of 37 sections which … were neither flagged by individual headings nor required to be initialed by the subcontractor"); *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 89 (2003) (arbitration clause inconspicuous, printed in eight-point typeface on the opposite side of the signature page; buyer not told the lease contained an arbitration clause or required to initial it).

Adding to the procedural unconscionability, the Terms of Service mandate using the rules of AAA, but 23andMe neither provided those rules nor specified which of the many hundreds of rules might apply. This is significant. In *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406 (2003), the court held it was oppressive to reference the Better Business Bureau arbitration rules, but not attach the rules to the agreement because "[t]he customer is forced to go to another source to find out the full import of what he or she is about to sign-and must go to that effort *prior* to signing." *Id.* (emphasis in original). Indeed, "[n]umerous cases have held that the failure to provide a copy of the arbitration rules to which the [plaintiff] would be bound, supported a finding of procedural unconscionability." *Trivedi v. Curexo Technology Corp.*, 189 Cal.App.4th 387, 393–394 (2010)

(citations omitted). *See also Sparks v. Vista Del Mar Child & Family Services*, 207 Cal.App.4th 1511, 1523 (2012), as modified on denial of reh'g (Aug. 20, 2012) (failure to provide AAA rules rendered agreement procedurally unconscionable); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal.App.4th 74, 84 (2014) (same).

Further, as *Harper* explains, there is the additional problem that by simply incorporating another agency's rules, "the clause pegs both the scope and procedure of the arbitration to rules which might change." *Id*. at 1407. So, it is unclear whether an arbitration here would be conducted under the AAA rules as of the time of contracting, or at the time of arbitration. "Thus even a customer who takes the trouble to check the [AAA] rules before signing the contract may be in for a preliminary legal battle in the event that [AAA] arbitration rules were to become substantively less favorable in the interim." *Id*.

### 2.2 The Terms of Service is substantively unconscionable because it imposes tremendous costs and risks on the plaintiff and because it is one-sided in favor of 23andMe

Given the district court's undoubtedly correct determination that the

arbitration clause in the Terms of Service was rife with procedural unconscionability, plaintiffs needed only to make a "minimal showing of the agreement's substantive unconscionability" to defeat the clause. *Mercuro v. Superior Court,* 96 Cal.App.4th 167, 175 (2002). Yet, the district court disregarded that showing, unfairly discounting the considerable substantive unconscionability here. Part of the problem appears to be the court's improper acceptance of 23andMe's post hoc attempt to revive the invalid arbitration clause by claiming to waive one of its most egregious provisions. The court also erred in its analysis of venue shifting provisions, relying on inapposite case law, and improperly ignored terms outside the physical arbitration clause itself.

Substantive unconscionability refers to contract terms are "overly harsh" (*Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th at 1532), "unduly oppressive" (*Perdue v. Crocker National Bank*, 38 Cal.3d 913, 925 (1985)), "so one-sided as to 'shock the conscience'" (*Pinnacle Museum Tower Assn., supra,* 55 Cal.4th 223, 246 (2012)), or "unfairly one-sided" (*Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (2003))[5]. All of these formulations

---

[5] The Calfornia Supreme Court is potentially poised to resolve whether

reflect the same concern: Terms, like those in 23andMe's Terms of Service, that are "unreasonably favorable to the more powerful party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th at 1145 (citation omitted).

### 2.2.1. The cost and fee shifting provision is unconscionable

23andMe's arbitration clause states that "arbitration costs and reasonable documented attorney's costs of both parties [are] to be borne by the party that ultimately loses." (ER 52, ¶28(b).) This provision is substantively unconscionable under California law.

The California Supreme Court has explained such clauses serve to deprive the plaintiff of a forum: "[I]t is not only the costs imposed on the claimant but the *risk* that the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process." *Armendariz*, 24 Cal. 4th at 110 (italics in original). And given that AAA

---

there is more than one standard for substantive unconscionability and, if so, what it is. *See,Sanchez v. Valencia Holding Co., LLC,* 200 Cal.App.4th 11, *review granted and opinion superseded*, 272 P.3d 976 (Cal. 2012), Cal. Supreme Court Case No. S199119. At present, the various tests are viewed as "nonexclusive formulations" for the notion that unconscionability requires a level of unfairness beyond a simple bad bargain. *Sabia v. Orange County Metro Realty, Inc.*, 227 Cal.App.4th at 25.

arbitrators charge $1500 per day for an arbitration (ER 482), not counting what 23andMe's top-tier lawyers charge, that is a huge risk to 23andMe's consumers.

Numerous courts, both state and federal, have followed the *Armendariz* logic to invalidate arbitration clauses with "loser pays" fee-shifting arrangements. *See, Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010) (finding unconscionable "an arbitration agreement that … includes a fee-shifting provision and that places those costs on the [plaintiff] in a process already stacked against it"); *Ting v. AT&T,* 319 F.3d 1126, 1151 (9th Cir. 2003) (fee-splitting scheme unconscionable "because it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court"); *Circuit City Stores, Inc. v. Adams,* 279 F.3d at 894; *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th at 89-91 (holding mandatory arbitration agreement substantively unconscionable because it required plaintiffs to pay approximately $8,000 to initiate the arbitration process); *Parada v. Superior Court*, 176 Cal.App.4th 1554 (2009) (concluding an arbitration agreement contained in a securities purchase agreement was unenforceable because it

28

imposed unreasonably high forum costs without apparent need).

Rather than try to defend the "loser pays" clause in light of the overwhelming precedent above, 23andMe claimed to be waiving it. Indeed, according to 23andMe, it was doing so at the urging of the organization 23andMe picked to conduct the arbitrations—the American Arbitration Association—who apparently recognized the fee shifting clause for the unconscionable term it is[6]. (ER 29.) The district court was persuaded that with ploy, 23andMe could exonerate itself from the consequences of having written an unfair contract. That is mistaken.

Courts do not allow efforts to salvage an unconscionable contract by arguing the unconscionable terms have been waived or are unenforceable. For example, in *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal.App.4th 74, the court made short work of a similar argument about an attorney fee provision. Essentially conceding a one-sided attorney fee provision in an arbitration clause was unenforceable, the defendant there instead argued the fee provision should be disregarded because it was

---

[6] The district court was not presented with any actual *evidence* of this supposed waiver; instead it was just a claim advanced by 23andMe's attorneys in their Reply memorandum.

illegal. The court was not persuaded: "According to the car wash companies, the attorney fees provision is not unconscionable because it is oppressively one-sided and unenforceable as written. To quote our colleagues in *Samaniego*[*v.Empire Today, LLC,*205 Cal.App.4th 1138] '[t]o state the premise is to refute [their] logic.'" *Carmona*, at p. 88.

*Carmona* relied in part on *Samaniego*, where the court reached the same result, refusing to countenance an argument that an unconscionable clause was irrelevant because it could not be enforced: "In other words, according to Empire, it isn't unconscionable because it is illegal and, hence, unenforceable… The argument is unpersuasive." *Samaniego* at p. 1147.

Nor does it matter that 23andMe is purportedly agreeing to waive enforcement of the unconscionable attorneys' fee clause rather than just arguing it is unenforceable. A party cannot just waive away oppressive contract terms to save an invalid contract. In determining uncoscionability, courts look at whether the contract provision was "uconscionable *at the time it was made.*" *Sonic-Calabassas,* 57 Cal.4th at 1134 (italics added, citations omitted.) Thus, "[n]o existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it." *Al-*

30

*Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1260 (9th Cir. 2005), quoting *Armendariz* at 125. Indeed, as this Court remarked in *Al-Safin*, "Circuit City has not cited any case, and our research has revealed none, where a party was permitted unilaterally to amend a contract midway through litigation concerning that contract." *Al-Safin,* 394 F.3d at 1260.

Not surprising since courts here and elsewhere have held just the opposite—that parties may "not rewrite the arbitration clause and adhere to unwritten standards on a case-by-case basis in order to claim that [the clause] is an acceptable one." *Murray v. United Food & Commercial Workers Int'l Union,* 289 F.3d 297, 304 (4th Cir. 2002). *See also Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 205 (3d Cir. 2010) (holding an "after-the-fact offer to waive" unconscionable arbitration provisions should have "no effect" on whether a court will hold an arbitration clause unenforceable); *Cooper v. MRM Inv. Co.,* 367 F.3d 493, 512-13 (6th Cir. 2004) (rejecting offer to waive illegal terms because "[t]here was neither a meeting of the minds nor consideration to support such a post hoc unilateral amendment of the agreement"); *Plaskett v. Bechtel Int'l, Inc.,* 243 F.Supp.2d 334, 344-45 (D.V.I. 2003) (rejecting offer to change unconscionable terms where plaintiff

"refused to accept [the] offer"); *Gourley v. Yellow Transp., LLC,* 178

F.Supp.2d 1196, 1205 (D. Colo. 2001) (rejecting defendant′s waiver offer).

23andMe's claimed waiver is also incompatible with the integration

and anti-waiver clauses in the Terms. (ER 52-53, ¶ 28(a), (c).) If indeed the

Terms of Service are the "entire agreement" between customers and

23andMe, then it follows that neither side can just unilaterally decide to

drop terms from the contract when it would appear to benefit that party.

### 2.2.2. The venue selection provision is unconscionable

The district court's error was compounded by its incomplete reading

of the law concerning venue selection provisions in arbitration clauses.

Here, the clause requires anyone wanting to arbitrate to do so in 23andMe's

home venue and to do so in English. (ER 52, ¶ 28(d).) Nevertheless, relying

on *Polimaster ltd. v. RAE Sys., Inc, supra,* the district court upheld the venue

selection clause, reasoning that this Court "has held that requiring

arbitration 'at the location of a defendant's principal place of business' is

'presumptively enforceable.'" (ER 27-28.)

Not quite. The problem with the district court's adoption of that

quote is that it was taken entirely out of context. *Polimaster* involved high-stakes business disputes between two sophisticated entities whose financial means to arbitrate disputes at any location was not questioned. Neither party claimed the arbitration agreement was unconscionable; instead the parties argued about which of them was the "defendant" for the purposes of a clause that mandated arbitration at the "defendant's site." *Id.* at 837-839. So while the quote from *Polimaster* is accurate so far as it goes, it is not a basis to swim against the tide of cases holding similar venue selection clauses substantively unconscionable where the plaintiffs are individuals or a small group.

In cases like this one, this Court has indicated that "[t]o assess the reasonableness of the 'place and manner' provisions in the arbitration clause, we must take into account the 'respective circumstances of the parties.' *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1288 (9th Cir. 2006) (en banc). In other words, a sophisticated business stands on a much different footing than an individual consumer or employee. As such, when faced with the latter situation, this Court and others easily find venue selection provisions to be oppressive where the costs far outweigh any

33

potential remedies. *See, e.g.*, *Newton v. American Debt Services, Inc.*, 549 F.App'x. 692, 694 (9th Cir. 2013) (finding unconscionable an arbitration forum provision that required California consumer to arbitrate claims against debt collection service at service's headquarters in Tulsa, Oklahoma); *Nagrampa* ("The parties′ bargaining positions were unequal, resulting in an oppressive contract of adhesion containing a forum selection clause that places venue in Boston, Massachusetts, only a few miles away from MailCoups headquarters in Avon, but three thousand miles away from Nagrampa′s home"); *Pinedo v. Premium Tobacco Stores, Inc.,* 85 Cal.App.4th 774, 781 (2000) (finding arbitral forum selection clause substantively unconscionable, in part, because it required a Los Angeles County employee to incur costs of traveling to Oakland for arbitration); *Aral v. Earthlink, Inc.,* 134 Cal.App.4th 544, 558-562 (2005) (finding requirement to hold arbitration in Georgia for claims worth approximately $50 was unconscionable because attendance in the distant forum was so gravely difficult and inconvenient" that the plaintiff consumer was "for all practical purposes" "deprived of his day in court."); *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165, 1177 (N.D.Cal. 2002) (observing that "[l]imiting

venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes").

The reasons for this are fairly obvious. Forcing a plaintiff to travel to a far away city or even a different state for arbitration over a relatively small amount is the same as forcing the plaintiff to give up the right to pursue his or her claim[7]. In fact, two of the class representatives here stated under oath that they would not pursue arbitration under these terms because the cost far outweighed any potential benefit. (ER 134, ¶ 8, 135, ¶¶ 3-4.) This is identical to *Aral v. EarthLink, Inc, supra*, where the court observed that "[t]o expect any or all of [the plaintiffs[ to travel to Georgia in order to obtain redress on a case-by-case basis, whether in a courthouse or in an arbitration hearing room, is unreasonable as a matter of law." 134 Cal.App.4th at 561. *See also*, *Bolter v. Superior Court*, 87 Cal.App.4th 900, 909 (2001), as modified on denial of reh'g (Mar. 30, 2001) ("[I]t is simply not a reasonable or affordable option for franchisees to abandon their offices

---

[7] Or, in the alternative, guaranteeing 23andMe an easy victory in a claim it makes against a consumer where the consumer views fighting the claim as more costly than just giving up.

for any length of time to litigate a dispute several thousand miles away.")

The district court, however, reasoned that requiring arbitration is San Francisco could not be too burdensome on 23andMe's customers because several of the class actions were filed in California, and the remaining ones were transferred here by stipulation. (ER 27-28.) That is an unfair and inaccurate comparison.

A nation-wide class action supported by one or more sophisticated law firms and an individual arbitration claim are not remotely similar[8]. The difference in economies of scale is vast. And, there are a host of procedural considerations that come into play in deciding where to file a class action. If the test for unconscionability is whether a prospective claimant could recruit a class action law firm to file a nation-wide case in the location dictated by a venue selection clause, the test might as well be abandoned. But that is not what the arbitration clause says. Venue is not pegged to a

---

[8] The arbitration clause does not have a class action waiver provision, and 23andMe has not yet publicly taken a position on whether class arbitration would be permitted. But, it is fair to assume 23andMe will argue it is not, as defendants almost universally do, based on *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). And while a few enterprising firms did file a class action arbitration claim with AAA (ER 329-351), it does not appear that anything has happened in those cases.

preferred location for a class action against 23andMe, it is set at 23andMe's

desired home-court venue. As such, in this case it is unconscionable.

### 2.2.3.  The one-sidedness of the arbitration clause is unconscionable

There is more. 23andMe's arbitration clause requires arbitration of

all disputes "[e]xcept for any disputes relating to intellectual property

rights, obligations, or any infringement claims…" In other words, it

excludes the kind of disputes 23andMe would be likely to bring against

consumers. This type of one-sidedness is a frequent ground for refusing to

enforce an arbitration clause.

Where an arbitration clause forces the weaker party to arbitration

while allowing the stronger party a choice of forums, it is often viewed as

substantively unconscionable unless there is a compelling business

justification for that one-sidedness. This is for the fairly obvious reason that

in such cases, "arbitration appears less as a forum for neutral dispute

resolution and more as a means of maximizing [the defendant's]

advantage." *Armendariz, supra,* 24 Cal.4th at pp. 117–118. In other words,

"[i]f the arbitration system established by the [defendant] is indeed fair,

then the [defendant] as well as the [plaintiff] should be willing to submit claims to arbitration." *Carmona v. Lincoln Millennium Car Wash, Inc.*, *supra*, 226 Cal.App.4th at p. 86.

      23andMe did not offer any evidence or argument to the district court that there was a business justification for excluding intellectual property and infringement claims. Certainly such claims are capable of being arbitrated. *See Comedy Club, Inc. v. Improv West Assocs.,* 553 F.3d 1277, 1285–86 (9th Cir.2009) (arbitration clause that provided that "[a]ll disputes relating to or arising under this Agreement ... shall be resolved by arbitration" applied to "all disputes, equitable and legal," including trademark disputes); *Valueselling Associates, LLC v. Temple*, 520 F.App'x 593, 594 (9th Cir. 2013) (arbitration clause that provided that " '[a]ny dispute, controversy, or question arising under, out of or relating to' the purchase of VSA and the subsequent termination of Temple′s rights to market VSA products" applied to copyright infringement claims). And "California courts have routinely rejected" the claimed need to protect intellectual property rights "as a legitimate basis for allowing only one party to an agreement access to the courts …" *Nagrampa v. MailCoups, Inc.*, 469 F.3d at 1285.

Instead, it appears simply that 23andMe does not want to give up the ability to bring those cases in a court of law because it finds courts advantageous in those circumstances and does not want to be stuck with trying to arbitrate intellectual property disputes. Not surprising since, as a company in the information technology field, intellectual property is 23andMe's bread and butter. But that doesn't make it fair. It still one-sided, and "[f]ederal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013).

Accordingly, the lack of bilaterality in 23andMe's arbitration clause is substantively unconscionable under California law. *See, Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 724 (2004) (arbitration clause that covered all employee claims but exempted employer claims for intellectual property disputes unenforceable). The list of cases where courts have found this type of one-sided provision to be substantively unconscionable is lengthy. *See, e.g.*, *Pokorny v. Quixtar, Inc., supra,* 601 F.3d at 1001 ("Requiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive unconscionability under California law"); *Nagrampa,* 469 F.3d at 1285

(finding clause substantively unconscionable in part because it gave the stronger party "access to a judicial forum to obtain provisional remedies to protect its intellectual property," while it provided the weaker party "with only the arbitral forum to resolve her claims"); *Armendariz* at 120 (substantively unconscionable provision required employees to arbitrate wrongful termination claims but employer had no corresponding obligation to arbitrate its trade secret claims against employees); *Samaniego, supra,* 205 Cal.App.4th at 1147 (substantively unconscionable provision required employees to arbitrate all claims but exempted from arbitration employer claims "seeking declaratory and preliminary injunctive relief to protect [employer's] proprietary information and noncompetition/nonsolicitation provisions"); *O'Hare v. Municipal Resource Consultants*, 107 Cal.App.4th 267, 274 (2003) (substantively unconscionable provision required employees to arbitrate any work related dispute but exempted from arbitration employer claims for injunctive and equitable relief based upon employees' alleged breaches of confidentiality provisions.)

The district court, however, waved these considerations aside without addressing them by noting that the Terms of Service ostensibly give

customers some very constrained intellectual property rights, including a limited license to re-publish a consumer's test results and a retention of copyrights in the user content a consumer uploads to 23andMe's website. (ER 29, 43, ¶ 9, 46, ¶ 13.) But there was no evidence presented to the district court that these "rights" are in any way meaningful or that a consumer would ever bring a claim for infringement of them. It is exceedingly unlikely that an individual consumer is going to sue 23andMe for copyright infringement over comments the consumer posts on 23andMe's website, and the license issue would only arise in the context of a counter-claim. In other words, the rights are basically illusory and their inclusion does not make the carve-out for intellectual property claims any less one-sided.

### 2.2.4. The shortened statute of limitations and the unilateral ability to modify the Terms of Service are unconscionable

23andMe's arbitration clause limits all claims to one year from the date of accrual. (ER 53, ¶ 28(d).) This sort of limitation, which invariably works to the detriment of the consumer, is substantively unconscionable.

*See*, *Ingle v. Circuit City Stores, Inc. supra,* 328 F. 3d at 1175 ("[B]ecause the benefit of this provision flows only to Circuit City, we conclude that the statute of limitations provision is substantively unconscionable"); *Circuit City Stores, Inc. v. Adams supra, 2*79 F.3d at 894 (reasoning that agreement was unconscionable where, among other things, it "impose[d] a strict one year statute of limitations on arbitrating claims that would deprive Adams of the benefit of the continuing violation doctrine available in [California Fair Employment and Housing Act] suits"); *Samaniego* at 1147 (arbitration provision was substantively unconscionable in imposing a shortened six-month limitations period).

Here, its sole purpose appears to be to protect 23andMe from statutory consumer protection claims, such as claims under the UCL and the CLRA, that carry a much longer limitations period. 23andMe offered no other explanation.

The Terms also give 23andMe the right to unilaterally modify the agreement, including the arbitration terms, without providing any notice to consumers beyond posting the new terms on the website. (ER 52, ¶26, 53, ¶ 28(h).) Again, retention of that ability in an arbitration agreement can be

grounds for invalidating it. *See, e.g., In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F.Supp.2d 1058, 1065 (D.Nev. 2012) ("Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract"); *Sparks v. Vista Del Mar Child & Family Services supra,*, 207 Cal.App.4th at 1523 ("An agreement to arbitrate is illusory if, as here, the employer can unilaterally modify the [terms]").

That is particularly true where the modifications become effective simply by posting them on a website. Parties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side. *Douglas v. U.S. Dist. Court for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007). Indeed, a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so. *Union Pac. R.R. v. Chi., Milwaukee, St. Paul & Pac. R.R.,* 549 F.2d 114, 118 (9th Cir. 1976). This is because a revised contract is merely an offer and does not bind the parties until it is accepted. *Matanuska*

*Val Farmers Cooperating Ass'n v. Monaghan,* 188 F.2d 906, 909 (9th Cir.

1951). And generally "an offeree cannot actually assent to an offer unless he

knows of its existence." *Douglas* at p. 1066 (citations omitted).

 The district court never considered the unconscionability of either

provision, instead concluding that because the language was not part of the

arbitration clause itself, it could not be a factor in the decision. (ER 26, 29.)

That is not an accurate reading of the law.

 What the district court was referring to was the principle that

challenges to a contract with an arbitration clause as a whole are matters for

the arbitrator to decide whereas challenges to the arbitration provision are

for the court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444,

126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). As the Supreme Court there tells

us, "[c]hallenges to the validity of arbitration agreements 'upon such

grounds as exist at law or in equity for the revocation of any contract' can be

divided into two types. One type challenges specifically the validity of the

agreement to arbitrate. [Citation.] The other challenges the contract as a

whole, either on a ground that directly affects the entire agreement (e.g., the

agreement was fraudulently induced), or on the ground that the illegality of

one of the contract's provisions renders the whole contract invalid."
*Buckeye,* 546 U.S. 440 at 444. A challenge of the first type, that contests the
validity of the agreement to arbitrate, is decided by the courts. *Id.* at 444–
445. A challenge of the second type, that contests the validity of the
agreement as a whole, is decided by the arbitrator. *Id.* at 445–446. *See also*
*Nagrampa v. MailCoups, Inc.*, 469 F.3d at 1264 (same).

Here, however, the district court mistakenly read the "challenge to
the validity of the agreement as a whole" concept to mean that it could not
even consider any language outside the physical parameters of the
arbitration clause itself. Not so. This Court recently reiterated that just
because the challenged clauses "were located outside of the specific
arbitration clause does not mean those provisions cannot be considered
when determining the unconscionability of the arbitration agreement."
*Newton*, 549 F.Appx. at 694, fn. 2, citing *Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63, 73, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Indeed, the district
court's citation to *Phillips v. Sprint PCS*, 209 Cal.App.4th 758 (2012), reh'g
denied (Oct. 17, 2012), review denied (Dec. 19, 2012), confirms this, since
in that case the plaintiff's challenge was properly seen as being to the

contract as a whole: "In arguing that the "contract provisions" are unconscionable plaintiff vaguely suggests that the arbitration provision itself is unconscionable. But the argument is never developed or substantiated." *Id*. at 774.

Hence, the district court erred in refusing to consider the statute of limitations and unilateral right to modify provisions in deciding substantive unconscionability. Both provisions, along with the "loser pays" fee-shifting term, the onerous venue selection term, and the exclusion of 23andMe's intellectual property claims, all discussed above, render the arbitration clause substantively unconscionable. Under 23andMe's Terms, a person who wants her money back must be prepared to advance thousands of dollars just to initiate the arbitration and must be willing to risk losing a lot more if the arbitrator decides against her. Absolutely no one will weigh these costs and benefits and opt to proceed with arbitration on a claim worth $99, a fact that cannot be lost on 23andMe.

Compare this with the arbitration clause upheld by the Supreme Court in *Concepcion*. There, the agreement specified that the defendant (AT&T) must pay all costs for nonfrivolous claims; that arbitration must

take place in the county in which the customer is billed; that, for claims of

$10,000 or less, the customer may choose whether the arbitration proceeds

in person, by telephone, or based only on submissions; that either party may

bring a claim in small claims court in lieu of arbitration; and that the

arbitrator may award any form of individual relief, including injunctions and

presumably punitive damages. 131 S.Ct. at 1744. The agreement, moreover,

denied AT&T any ability to seek reimbursement of its attorney's fees, and,

in the event that a customer received an arbitration award greater than

AT&T's last written settlement offer, required AT & T to pay a $7,500

minimum recovery and twice the amount of the claimant's attorney's fees.

*Id.*

That is an example of a fair consumer arbitration clause. 23andMe's

is not.

### 3.    The arbitration clause cannot be severed

Because it refused to find substantive unconscionability, the district

court did not address the issue of severability. But, given 23andMe's

insistence on that as an alternative to invalidating the arbitration agreement

entirely, brief discussion is appropriate.

Under California law, an arbitration clause cannot be severed if "the agreement is 'permeated' by unconscionability." *Lhotka v. Geographic Expeditions, Inc.,* 181 Cal.App.4th 816, 826 (2010). *See also Newton v. American Debt Services, Inc.,* 549 F.Appx at 695. "The overarching inquiry is whether the interests of justice would be furthered by severance." *Armendariz* at 124 (quotations omitted).

As shown above, the arbitration clause here is permeated by multiple unconscionable provisions, which, if severed, would leave practically nothing remaining. The district court would have to re-write the clause for it to exist. That it cannot do. *Nagrampa, supra,* 469 F.3d at 1293-1294 ("Civil Code section 1670.5 does not grant us the discretion to reform or modify the arbitration provision through augmentation and neither does the FAA"); *Fitz v. NCR Corp.,* 118 Cal.App.4th at p. 727 (same); *Sabia v. Orange County Metro Realty, supra,* 227 Cal.App.4th at 40 ("our power to sever does not include the power to reform the contract by augmenting it with additional terms").

## Conclusion

The district court's order compelling arbitration should be reversed.
The arbitration clause here is substantively unconscionable, and that,
combined with the procedural unconscionability found by the district court,
renders it unenforceable under California law and the FAA.

## Certificate of Compliance

I certify that this brief complies with the type-volume limitation set
forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This
brief uses a proportional typeface and 14-point font, and contains 10,925
words.

Dated:  October 31, 2014          Respectfully Submitted,

Gayle M. Blatt
Jeremy Robinson
Jason C. Evans
CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD,
LLP

Mark Ankcorn
ANKCORN LAW FIRM, P.C.


/s/  Jeremy Robinson
Jeremy Robinson, Esq.

## **Statement of Related Cases**

Appellants are not aware of any related cases currently pending in

this Court.

Dated: October 31, 2014        Gayle M. Blatt
Jeremy Robinson
Jason C. Evans
CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD,
LLP

Mark Ankcorn
ANKCORN LAW FIRM, P.C.


/s/   Jeremy Robinson
Jeremy Robinson, Esq.

## Appendix

### 9 U.S.C. § 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

### Cal. Civil Code § 1670.5. Unconscionable contract or clause of contract; finding as matter of law; remedies

(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

## **Certificate of Service**

I hereby certify that on October 31, 2014, I electronically filed the **Appellants' Opening Brief** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. I certify that all participants in this appeal are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Executed this 31st day of October, 2014, at San Diego, California.


/s/   Jeremy Robinson