**No. 14-16405**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

## *David Tompkins,*

*Plaintiff-Appellant*,

*v.*

## *23andMe, Inc.,*

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California, San Jose Division
D.C. No. 5:13-cv-05682-LHK (and consolidated cases)
Honorable Lucy H. Koh, United States District Judge

---

## BRIEF OF DEFENDANT-APPELLEE

---

ROBERT P. VARIAN (SBN 107459)
*Email: rvarian@orrick.com*
JAMES N. KRAMER (SBN 154709)
*Email: jkramer@orrick.com*
M. TODD SCOTT (SBN 226885)
*Email: tscott@orrick.com*
ALEXANDER K. TALARIDES (SBN 268068)
*Email: atalarides@orrick.com*
**ORRICK HERRINGTON & SUTCLIFFE LLP**
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CA 94105-2669
TELEPHONE: (415) 773-5700
FACSIMILE: (415) 773-5759

*Counsel for Defendant-Appellee*
**23ANDME, INC.**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   COUNTER-STATEMENT OF ISSUES .............................................5

III.  STATEMENT OF THE CASE ...........................................................6

    A.   Factual Background............................................................6

    B.   The Terms Of Service And Arbitration Agreement...........................8

    C.   The District Court's Order ..............................................11

IV.   SUMMARY OF ARGUMENT..................................................15

V.    ARGUMENT....................................................................19

    A.   Controlling Legal Principles and Rules ...........................19

        1.   The FAA Mandates That An Arbitration Agreement Be Enforced On The Same Terms As Other Contracts................19

        2.   A Contract Term Is Substantively Unconscionable Only If It Is Such An Extreme Departure From Normal Practices, And So One-Sided,  That It Shocks The Conscience ................................................................23

    B.   Each Of The Provisions of the Arbitration Agreement Must Be Enforced – Under Both Federal And State Law ................................24

        1.   The Arbitration Agreement's "Prevailing-Party" Fee-Shifting Clause Poses No Obstacle To Enforcement .............24

        2.   The Arbitration Agreement's Forum Selection Clause Poses No Obstacle To Enforcement ........................................30

        3.   The Arbitration Agreement's Exclusion Of IP Claims Poses No Obstacle To Enforcement ........................................39

        4.   The Three Challenged Clauses Are Easily Severable, Both Individually And In Combination ..................................44

    C.   Plaintiff's Citation Of Provisions Outside The Arbitration Agreement Is Legally Irrelevant, And Is Unfounded In Any Event..........................................................................47

# TABLE OF CONTENTS
### (continued)

**Page**

1. Because An Arbitration Agreement Is Severable From The Remainder Of The Contract, A Party Cannot Rely On Provisions Outside The Arbitration Agreement In Resisting Enforcement ............................................................47

2. Courts Have Specifically Held That Contract-Modification And Statute Of Limitations Provisions That Are Not Part Of The Arbitration Agreement Are Irrelevant To Enforceability......................................................49

3. Plaintiff's Arguments Regarding The Contract Modification And Limitations Provisions Also Lack Substantive Merit ....................................................53

VI. CONCLUSION..............................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
66 Cal. App. 4th 1199 (1998) ........................................................................54

*Abreu v. Slide, Inc.*,
2012 WL 2873772 (N.D. Cal. July 12, 2012) ...................................................51

*Adler v. Dell, Inc.*,
2008 WL 5351042 (E.D. Mich. Dec. 18, 2008) ................................................52

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995)........................................................................................21

*Am. Exp. Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013)....................................................................................20

*Am. Software, Inc. v. Ali*,
46 Cal. App. 4th 1386 (1996) ...................................................................23, 24

*Am. Online, Inc. v. Super. Ct.*,
90 Cal. App. 4th 1 (2001) ...........................................................32, 33, 37, 38

*Applera Corp. v. MP Biomedicals, LLC*,
173 Cal. App. 4th 769 (2009) ...................................................................26, 28

*Aral v. EarthLink, Inc.*,
134 Cal. App. 4th 544 (2005) .........................................................................38

*Armendariz v. Foundation Health Psychare Servs., Inc.*,
24 Cal. 4th 83 (2000) ...............................................................................*passim*

*Aron v. U-Haul Co. of Cal.*,
143 Cal. App. 4th 796 (2006) .........................................................................24

*Aryeh v. Canon Bus. Solutions, Inc.*,
55 Cal. 4th 1185 (2013) .................................................................................57

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011)..............................................................................*passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Belton v. Comcast Cable Holdings, LLC*,
    151 Cal. App. 4th 1224 (2007) ...........................................................23, 26, 42

*Bigler v. Harker Sch.*,
    213 Cal. App. 4th 727 (2013) ..........................................................................45

*Bolter v. Superior Court*,
    87 Cal. App. 4th 900 (2001) .....................................................................*passim*

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) ................................................................49, 52, 53

*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*,
    216 Cal. App. 4th 1249 (2013) .......................................................................56

*Buckeye Check Cashing Inc. v. Cardegna*,
    546 U.S. 440 (2006)...............................................................................*passim*

*Cal. Grocers Ass'n v. Bank of Am.*,
    22 Cal. App. 4th 205 (1994) ...........................................................................23

*Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*,
    12 Cal. App. 4th 1666 (1993) ................................................................30, 32, 33

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
    226 Cal. App. 4th 74 (2014) .........................................................25, 27, 39, 41

*Casas v. Carmax Auto Superstores Cal. LLC*,
    224 Cal. App. 4th 1233 (2014) .......................................................................54

*Chin v. Advanced Fresh Concepts Franchise Corp.*,
    194 Cal. App. 4th 704 (2011) .........................................................................41

*Circuit City Stores, Inc. v. Adams*,
    279 F.3d 889 (9th Cir. 2002) ...................................................................*passim*

*Comb v. PayPal, Inc.*,
    218 F. Supp. 2d 1165 (N.D. Cal. 2002)............................................................37

*CQL Original Prods., Inc. v. Nat'l Hockey League Players' Ass'n*,
    39 Cal. App. 4th 1347 (1995) ....................................................................31, 32

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Curry v. Volt Info. Sci., Inc.*,
  2008 WL 719214 (S.D.N.Y. Mar. 18, 2008).......................................52

*D-J Eng'ring Inc. v. UBS Fin. Servs., Inc.*,
  2012 WL 171342 (D. Kan. Jan. 20, 2012) .........................................52

*Damato v. Time Warner Cable, Inc.*,
  2013 WL 3968765 (E.D.N.Y. July 31, 2013)................................7, 51

*Davis v. Global Client Solutions, LLC*,
  2011 WL 4738547 (W.D. Ky. Oct. 7, 2011) .....................................52

*Davis v. O'Melveny & Myers*,
  485 F.3d 1066 (9th Cir. 2007), *overruled on other grounds by*
  *Ferguson v. Corinthian Coll., Inc.*, 733 F.3d 928 (9th Cir. 2013) ....................56

*Discover Bank v. Super. Ct.*,
  36 Cal. 4th 148 (2005) ...............................................................21, 22

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996).........................................................................20

*Dotson v. Amgen, Inc.*,
  181 Cal. App. 4th 975 (2010) ....................................................44, 46

*EnPalm, LLC v. Teitler Family Trust*,
  162 Cal. App. 4th 770 (2008) .........................................................26

*Eukor Car Carriers Inc. v. Chemoil Corp.*,
  2011 WL 5599729 (N.D. Cal. Nov. 17, 2011) .................................52

*Fitz v. NCR Corp.*,
  118 Cal. App. 4th 702 (2004) ....................................................39, 40

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal. App. 4th 846 (2001) ...........................................................24

*Furda v. Super. Ct.*,
  161 Cal. App. 3d 418 (1984) .........................................31, 32, 33, 37

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Goodwin v. H.M. Brown & Assocs., Inc.*,
   2011 WL 820025 (D. Colo. Mar. 2, 2011) ........................................................52

*Grabowksi v. Robinson*,
   817 F. Supp. 2d 1159 (S.D. Cal. 2011) ...............................................................45

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ...............................................................................................48

*Green Tree Fin. Corp-Alabama v. Randolph*,
   531 U.S. 79 (2000) ........................................................................................25, 35

*Gutierrez v. Autowest, Inc.*,
   114 Cal. App. 4th 77 (2003) ..........................................................................25, 29

*Gutierrez v. Sea World LLC*,
   2014 WL 4829087 (S.D. Cal. Sept. 26, 2014) ...................................................45

*Han v. Mobil Oil Corp.*,
   73 F.3d 872 (9th Cir. 1995) .................................................................................55

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (2003) ....................................................................................53, 56

*Intershop Commc'ns v. Super. Ct.*,
   104 Cal. App. 4th 191 (2002) ....................................................................*passim*

*Irwin v. UBS Painewebber, Inc.*,
   324 F. Supp. 2d 1103 (C.D. Cal. 2004) ..............................................................45

*Izzi v. Mesquite Country Club*,
   186 Cal. App. 3d 1309 (1986) ...............................................................................9

*James v. Conceptus, Inc.*,
   851 F. Supp. 2d 1020 (S.D. Tex. 2012) ..............................................................39

*Janda v. T-Mobile USA, Inc.*,
   378 F. App'x 705 (9th Cir. 2010) .......................................................................55

*Kairy v. Supershuttle Int'l, Inc.*,
   2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) ...................................................51

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kilgore v. KeyBank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ...........................................................25

*King v. Hausfeld*,
  2013 WL 1435288 (N.D. Cal. Apr. 19, 2013)....................................27

*Koehl v. Verio, Inc.*,
  142 Cal. App. 4th 1313 (2006) ..........................................................23

*KPMG LLP v. Cocchi*,
  132 S. Ct. 23 (2011)...........................................................................19

*L&M Creations, Inc. v. CRC Info. Sys.*,
  2011 WL 1103636 (D. Nev. Mar. 23, 2011) .....................................52

*Lane v. Francis Capital Mgmt. LLC*,
  224 Cal. App. 4th 676 (2014) ..............................................................9

*Lara v. Onsite Health, Inc.*,
  896 F. Supp. 2d 831 (N.D. Cal. 2012)...............................................49

*Laster v. AT&T Mobility LLC*,
  584 F.3d 849 (9th Cir. 2009) .............................................................22

*Lennar Homes of Cal., Inc. v. Stephens*,
  --- Cal. App. 4th ---, 2014 WL 7184219 (Cal. Ct. App. Dec. 18,
  2014) ............................................................................................25, 28

*Little v. Auto Stiegler, Inc.*,
  29 Cal. 4th 1064 (2003) .....................................................................46

*Lockton v. O'Rourke*,
  184 Cal. App. 4th 1051 (2010) ..........................................................26

*Lombardi v. DirecTV, Inc.*,
  546 F. App'x 715 (9th Cir. 2013).......................................................40

*Lu v. Dryclean-U.S.A. of Cal., Inc.*,
  11 Cal. App. 4th 1490 (1992) ................................................31, 32, 37

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lucas v. Gund, Inc.*,
  450 F. Supp. 2d 1125 (C.D. Cal. 2006) ............................................................45

*M.A. Mortensen Co. v. Saunders Concrete Co., Inc.*,
  676 F.3d 1153 (8th Cir. 2012) ......................................................................49

*Malibou Lake Mountain Club, Ltd. v. Smith*,
  18 Cal. App. 3d 31 (1971) ...............................................................26, 32, 36, 37

*Marmet Health Care Ctr., Inc. v. Brown*,
  132 S. Ct. 1201 (2012).....................................................................................29

*Marzano v. Proficio Mortg. Ventures, LLC*,
  942 F. Supp. 2d 781 (N.D. Ill. 2013)...............................................................51

*McManus v. CIBC World Markets Corp.*,
  109 Cal. App. 4th 76 (2003) ............................................................................45

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ...........................................................................29

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985).................................................................................15, 42

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) ........................................................................24

*Mortensen v. Bresnan Commc'ns, LLC*,
  722 F.3d 1151 (9th Cir. 2013) ..................................................................*passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..............................................................................................20

*Muriithi v. Shuttle Exp., Inc.*,
  712 F.3d 173 (4th Cir. 2013) .....................................................................50, 52

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) .......................................................37, 38, 39, 41

*Net2Phone, Inc. v. Super. Ct.*,
  109 Cal. App. 4th 583 (2003) ..........................................................................31

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Newton v. American Debt Servs., Inc.*,
    549 F. App'x 692 (9th Cir. 2013) .......................................................37

*Nitro-Lift Techs., L.L.C. v. Howard*,
    133 S. Ct. 500 (2012) .........................................................................49

*O'Hare v. Mun. Res. Consultants*,
    107 Cal. App. 4th 267 (2003) .....................................................39, 41

*Olinick v. BMG Entm't*,
    138 Cal. App. 4th 1286 (2006) .....................................31, 32, 36, 37

*Paduano v. Exp. Scripts, Inc.*,
    --- F. Supp. 3d ---, 2014 WL 5431320 (E.D.N.Y. Oct. 27, 2014) .....................51

*Parada v. Super. Ct.*,
    176 Cal. App. 4th 1554 (2009) ...................................................25, 29

*Peleg v. Neiman Marcus Grp., Inc.*,
    204 Cal. App. 4th 1425 (2012) .........................................................54

*Peng v. First Republic Bank*,
    219 Cal. App. 4th 1462 (2013) .........................................................54

*Perry v. Thomas*,
    482 U.S. 483 (1987) ..............................................................21, 26, 28

*Philips v. Sprint PCS*,
    209 Cal. App. 4th 758 (2012) .....................................................50, 51

*Pinedo v. Premium Tobacco Stores, Inc.*,
    85 Cal. App. 4th 774 (2000) ..............................................................36

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) .....................................................24, 42, 55

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) .......................................25, 29, 39, 41

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010).........................................................12, 48, 49, 53

ix

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Roman v. Super. Ct.*,
    172 Cal. App. 4th 1462 (2009) ...........................................................44

*Samaniego v. Empire Today, LLC*,
    205 Cal. App. 4th 1138 (2012) ...................................................*passim*

*Santisas v. Goodin*,
    17 Cal. 4th 599 (1998) ......................................................................26

*Serpa v. Cal. Surety Investigations, Inc.*,
    215 Cal. App. 4th 695 (2013) .............................................................54

*Sheikh v. Cisco Sys., Inc.*,
    2009 WL 890880 (N.D. Cal. Mar. 31, 2009) .....................................45

*Skyway Aviation, Inc. v. Troyer*,
    147 Cal. App. 3d 604 (1983) .............................................................26

*Smith, Valentino & Smith, Inc. v. Super. Ct.*,
    17 Cal. 3d 491 (1976) ................................................................30, 32

*Soltani v. W. & S. Life Ins. Co.*,
    258 F.3d 1038 (9th Cir. 2001) ...........................................................55

*Sparks v. Vista Del Mar Child & Family Serv.*,
    207 Cal. App. 4th 1511 (2012) .....................................................53, 54

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ...............................................25, 28, 29

*Traynor v. Lexington Ins. Co.*,
    420 F. App'x 674 (9th Cir. 2011) .......................................................55

*Trend Homes, Inc. v. Super. Ct.*,
    131 Cal. App. 4th 950 (2005) .............................................................26

*Waller v. Hewlett-Packard Co.*,
    295 F.R.D. 472 (S.D. Cal. 2013) .......................................................10

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
    187 Cal. App. 4th 634 (2010) .............................................................24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wayne v. Staples, Inc.*,
  135 Cal. App. 4th 466 (2006) ............................................................24

*Wilmot v. McNabb*,
  269 F. Supp. 2d 1203 (N.D. Cal. 2003) ............................................45

*Wynne v. Am. Express Co.*,
  2010 WL 3860362 (E.D. Tex. Sept. 30, 2010)..................................52

*Xuereb v. Marcus & Millichap, Inc.*,
  3 Cal. App. 4th 1338 (1992) .............................................................26

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
  893 F. Supp. 2d 1058 (D. Nev. 2012).........................................53, 54

## Statutes

Cal. Bus. & Prof. Code § 20040.5 ............................................................38

Cal. Civ. Code § 1670.5(a) .......................................................................44

Cal. Civ. Code § 1717................................................................................17, 26

Cal. Civ. Proc. Code § 360.5 .....................................................................56

9 U.S.C. § 2 (Federal Arbitration Act) ...........................................*passim*

## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel for Defendant-Appellee 23andMe, Inc. states that

Appellee 23andMe, Inc. is a private company, and no publicly-held company owns

10% or more of 23andMe, Inc.'s stock.

Date: January 5, 2015          Respectfully submitted,

                                        **ORRICK, HERRINGTON & SUTCLIFFE LLP**

                                        By:  _____*/s/ Robert P. Varian*_____
                                                  Robert P. Varian

                                    *Attorneys for Defendant-Appellee*
                                          **23ANDME, INC.**

                             The Orrick Building
                             405 Howard Street
                             San Francisco, CA  94105-2669
                             (415) 773-5700

## I.    <u>INTRODUCTION</u>

Affirmance of the ruling below is required on the grounds relied upon by the District Court.  It is also mandated on separate grounds that are independently decisive.

The detailed order (the "Order") enforcing the 23andMe arbitration agreement (the "Arbitration Agreement") is fully supported by the facts, law and reasoning it recites in determining that the Arbitration Agreement is not substantively unconscionable under California law.  It was Plaintiffs' burden to demonstrate that the Arbitration Agreement was such an extreme departure from normal practices as to "shock the conscience," and they fell well short of the mark.  Because arbitration agreements must be enforced unless they are both procedurally and substantively unconscionable, the District Court's decision enforcing the Arbitration Agreement and dismissing Plaintiffs' complaints was the correct result.

Enforcement of the Arbitration Agreement, and affirmance of the Order, is also required as a matter of federal arbitration law, under controlling Supreme Court decisions that apply the Federal Arbitration Act (the "FAA").  The District Court did not reach, or need to reach, that issue because its ruling on the absence of substantive unconscionability under California law was dispositive.  Under the Supreme Court cases and the FAA, the Arbitration Agreement must be enforced, irrespective of state law unconscionability arguments, because (among other

1

things) the FAA bars discrimination against arbitration agreements, and the contract provisions that Plaintiffs challenge on appeal are routinely enforced by California courts in non-arbitration contracts.

As the Supreme Court has held in decisions that changed the landscape of arbitration law in California, the policies underlying the FAA generally require that arbitration agreements be enforced according to their terms. That is true irrespective of whether enforcement has consequences that might be viewed as undesirable or contrary to state policy.

The FAA further requires that when contract provisions are included in arbitration agreements, they must be enforced on the same terms, and to the same extent, as when they are included in other contracts. Courts cannot refuse to enforce the terms of an arbitration contract if those terms are enforced in non-arbitration contracts. Indeed, this Court has held that the most recent Supreme Court case requires that arbitration agreements are entitled to preferred treatment under the FAA.

The fact that the principal Arbitration Agreement terms challenged by Plaintiffs – the selection of San Francisco as a venue and a provision that the prevailing party is entitled to attorneys' fees – are enforced as a matter of course by California courts, across a broad spectrum of contracts, is beyond dispute. Accordingly, the FAA requires that they be enforced in the Arbitration Agreement.

Although the FAA and controlling Supreme Court cases require enforcement of the Arbitration Agreement without further analysis, it is equally clear that there is no basis for concluding that the provisions of the Arbitration Agreement are substantively unconscionable under California law. The fact that the Arbitration Agreement's provisions are frequently included in California contracts, and routinely enforced by California courts, conclusively demonstrates that they are not departures from normal practices – much less so extreme, one-sided and unfair as to "shocking to the conscience." The District Court's careful examination of each of the provisions at issue, which did rely on the fact that they are generally enforced in other contracts, further underscores that they are not substantively unconscionable.

Plaintiffs' attempt to evade the District Court's ruling on substantive unconscionability by citing provisions that are not part of the Arbitration Agreement is unavailing as a matter of federal arbitration law. As the Supreme Court has repeatedly held, arbitration agreements are severable from the contracts in which they are contained, and unconscionability must be determined based on the arbitration agreement **alone** – without reference to other terms in the broader contract that contains the arbitration agreement. The District Court thus correctly held that Plaintiffs' attempt to argue that the Arbitration Agreement is unconscionable based on statute of limitations and contract-modification

provisions in the Terms of Service ("TOS"), but not in the Arbitration Agreement, is precluded as matter of federal arbitration law.

Furthermore, although none of the provisions of the Arbitration Agreement is substantively unconscionable, if a provision of an arbitration contract is unconscionable, the appropriate course is to sever the term and enforce the balance of the Agreement. That rule is mandated by the policies favoring arbitration, and comports with the severability clause of the TOS.

Nothing in the Opening Brief undercuts any of the reasons that the Arbitration Agreement must be enforced, and the Order affirmed. Plaintiffs all but ignore the Supreme Court cases that have fundamentally altered the rules governing enforcement of arbitration agreements covered by the FAA. Most of the arguments set forth in the Opening Brief are based on (1) cases that were either decided before the controlling Supreme Court rulings or fail to account for them, and (2) policy arguments that the Supreme Court has ruled are legally irrelevant.

The discussion below addresses both the federal arbitration law and Supreme Court cases that require that the Arbitration Agreement be enforced according to its terms, and the California law demonstrating that the Agreement is not substantively unconscionable. After outlining the governing federal and state law, the argument section demonstrates on a term-by-term basis that the provisions at issue: (1) are not substantively unconscionable under California law, and

(2) must be enforced pursuant to rules articulated in Supreme Court cases decided under the FAA.

## II.  COUNTER-STATEMENT OF ISSUES

1.  Does the fact that California courts routinely enforce prevailing party fee-shifting and forum selection clauses like those contained in the Arbitration Agreement:

    (a)  require enforcement of the provisions pursuant to federal arbitration law mandating non-discriminatory enforcement of arbitration provisions on the same terms as they are enforced in contracts generally; and

    (b)  establish that such provisions are not such an extreme departure from normal practices as to shock the conscience and be substantively unconscionable?

2.  Did the District Court err in determining that the provisions of the Arbitration Agreement are not substantively unconscionable, *i.e.*, that the Agreement is not so one-sided and unfair, and such an extreme departure from normal business practices, as to shock the conscience?

3.  Did the District Court err in holding that substantive unconscionability must be determined on the basis of the Arbitration

Agreement itself, without reference to other provisions of the TOS in

which the Arbitration Agreement is incorporated?

4.     If a provision of the Arbitration Agreement were substantively

unconscionable, would the Arbitration Agreement nevertheless be

enforceable because the offending provision can be severed?

## III.    STATEMENT OF THE CASE

Much of the Opening Brief's Statement of the Case is devoted to Plaintiffs'

liability allegations and a pejorative description of 23andMe – not facts relevant to

the issues presented for review.  The relevant facts regarding Plaintiffs' litigation

claims are that they are indisputably covered by the Arbitration Agreement, and

other sophisticated law firms have recognized that the Agreement is enforceable by

filing arbitration complaints alleging the same exact claims.  ER 5, 28, 147-48,

393-415.

### A.    FACTUAL BACKGROUND

23andMe is a personal genetic company dedicated to helping consumers

access and understand their personal genetic data in a cost-effective manner, while

advancing scientific research in human genetics.  ER 150.  The Company was

founded in 2006 with backing from prominent health science companies, employs

a staff of scientists, participates in medical school and research programs, and has a

scientific advisory board composed of recognized experts in human genetics,

bioinformatics and computer science.  ER 150-75.  The Personal Genome Service

6

(the "PGS") that was the subject of Plaintiffs' District Court claims was named

Invention of the Year by *Time* Magazine in 2008. ER 177-78.

Plaintiffs and other customers who purchased the PGS received: (1) raw

genetic data that can be analyzed at independent laboratories, (2) ancestry

information identifying DNA relatives and tracing their geographic and ethic

lineage back 10,000 years, and (3) high-level information regarding genetic traits

and health risks. ER 183-92. Plaintiffs' claims relate only to the health-related

component of the PGS.

Contrary to the litigation assertions reprised in Plaintiffs' Statement of the

Case, the Company's website and TOS made abundantly clear that the health-

related component was for informational purposes only, did not constitute medical

advice or diagnoses, and could not be used by customers for diagnostic purposes.

ER 38-42.

On November 22, 2013 the FDA sent 23andMe a letter that expressed

dissatisfaction with the level of recent communication it had received from the

Company, and directed 23andMe to discontinue marketing of the health-related

component of the PGS. ER 117-18. The FDA letter did not address the raw data

or "ancestry" components, and did not require 23andMe to cease providing health-

related information to existing customers. *Id.* As the letter itself makes clear, the

FDA was fully aware of 23andMe's marketing efforts from the beginning (the

Company began meeting with the FDA before launching the PGS in 2007), and 23andMe never claimed that the PGS had FDA approval.  *Id.*

### B.   THE TERMS OF SERVICE AND ARBITRATION AGREEMENT

Although the TOS were "adhesive" in that they were not subject to individualized negotiation, that is true with respect to virtually all present-day consumer contracts.  As the Supreme Court observed in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ("*Concepcion*"), "the times in which consumer contracts were anything other than adhesive are long past."  *Id.* at 1750.

The Arbitration Agreement included in the TOS is in the same font, and given the same prominence, as the other TOS provisions, and bears the bolded heading "**Applicable law and arbitration.**"  ER 52, § 28(b).  The TOS stated that they set forth the terms of the legal contract between the customer and the Company regarding the PGS (ER 37, § 2), and were both referenced and hyperlinked throughout the 23andMe website through which the PGS is purchased. ER 3-5, 137-44.

Customers formally accepted the TOS when they created an account and registered the kit used to collect their DNA sample, which was purchased on the website at the inception of the transaction.  Before creating an account, all purchasers clicked on a button located immediately next to the statement:  "Yes, I have read and agree to the Terms of Service and Privacy Statement."  ER 4, 137,

8

140.  After creating the account, purchasers indicated their acceptance of the TOS a second time when registering the collection kits by clicking a button next to the statement "**I ACCEPT THE TERMS OF SERVICE**," after viewing a screen stating:  "To continue, accept our terms of service."  ER 5, 137-138, 142 (bolding in original).  The screen further stated:  "When you sign up for 23andMe's service you agree to our Terms of Service.  Click **here** to read our full Terms of Service." *Id.* (bolding in original).

The Arbitration Agreement provides for arbitration under the rules of the American Arbitration Association ("AAA") (ER 52, § 28(b), which are universally recognized as "neutral and fair,"[1] and are readily available on the Internet, including on the AAA's website.[2]  The AAA's Supplementary Procedures for Consumer-Related Disputes (the "AAA Consumer Rules")[3] provide:

---

[1] *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318 (1986).

[2] Accordingly, as the cases recognize, the "failure" to attach the AAA rules to an arbitration agreement (or provide a link to them) is neither unreasonable nor unfair. *See, e.g.*, *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 691 (2014) ("[T]he failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable.  There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties – the AAA rules are available on the Internet.").

[3] The AAA Consumer Rules "shall apply whenever the American Arbitration Association (AAA) or its rules are used in an agreement between a consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or

- That all expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as costs related to proof and witnesses are paid by the Company. ER 483.

- That the consumer can request a "Desk Arbitration," in which the arbitrator decides the claim on the basis of written submissions, without a hearing. ER 475.

- That the consumer can request a telephonic hearing in lieu of an in-person hearing. *Id*.

Because the Arbitration Agreement designates California law (ER 52, § 28(b), 23andMe's customers were also accorded the benefits of California's "extremely consumer friendly statutes." *Waller v. Hewlett-Packard Co*., 295 F.R.D. 472, 485-86 (S.D. Cal. 2013).

The Arbitration Agreement provides that the prevailing party is entitled to recover attorneys' fees and costs (ER 52, § 28(b), thereby enhancing the ability of 23andMe's customers to bring meritorious claims by requiring the Company to pay their attorneys' fees if they are the prevailing party. The clause thus provides customers with an effective means to recover attorneys' fees against a "deep pocket." The Company, as a practical matter, has no similar recourse against consumers, and has waived any right to recover attorneys' fees against its customers in any event. ER 29.

---

primarily non-negotiable in most or all of its terms, conditions, features, or choices." ER 477 (Rule C-1).

## C.   THE DISTRICT COURT'S ORDER

After a thorough analysis, the District Court concluded that "Plaintiffs have not met their burden to demonstrate that [the Arbitration Agreement] is both procedurally and substantively unconscionable," and that the Arbitration Agreement must therefore be enforced.  ER 30.  In reaching that conclusion the Court rejected Plaintiffs' various arguments that the Arbitration Agreement and its individual clauses were substantively unconscionable – based on a careful examination of the facts and case law, without reference to the fact that the provisions at issue are frequently included in California contracts and enforced by California courts.

Because the Court determined that the Arbitration Agreement was not substantively unconscionable, it did not apply – or need to apply – two legal rules that provide a separate and independent basis for enforcing the Arbitration Agreement and affirming the Order: (1) the FAA's requirement that provisions in arbitration agreements be enforced on the same terms as when they appear in other contracts; and (2) the rule that arbitration provisions found to be substantively unconscionable should be severed, and the balance of the agreement be enforced.

The District Court concluded that the Arbitration Agreement was procedurally unconscionable (ER 24-26), based on an analysis that was unduly harsh in several respects, including because it gave short shrift to the fact that the

TOS were referenced and hyperlinked throughout the 23andMe website (at the bottom of most of the pages) through which all PGS transactions were executed. It may have been "a better practice" to require customers to formally accept the TOS at the time the DNA collection kit was purchased, rather than when registering the kit and creating an account (ER 11), but the TOS were in no way hidden or obscured, and terms of service that include AAA arbitration agreements are standard fare in consumer contracts. In any event, the Court's conclusion that "overall, the arbitration provision is not unconscionable" (ER 23) was plainly correct.

The District Court cited *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440 (2006), and other cases as establishing a controlling bright-line rule – mandated by the language of the FAA – that unconscionability must be analyzed on the basis of the arbitration agreement alone, without reference to other provisions in the contract in which the agreement is included. ER 23-24. Applying that rule, the Court correctly analyzed unconscionability in terms of arguments that applied to the Arbitration Agreement, not to the TOS as a whole. It rejected Plaintiffs' attempt to rely on the TOS's statute of limitations and contract-modification provisions because neither term was part of or referenced in the Arbitration Agreement. ER 29.

In analyzing substantive unconscionability the District Court noted that under California law "a substantively unconscionable term must be so unreasonable and one-sided as to 'shock the conscience.'" ER 27 (citing California cases). The Court did not rely on the related requirement that to be substantively unconscionable a term must be such an extreme departure from customary business practices that it shocks the conscience, or on the fact that the terms at issue are routinely included in contracts, which further support its ruling.

The District Court's determination that the Arbitration Agreement's selection of San Francisco as a venue was not substantively unconscionable was based on the applicable Supreme Court, Ninth Circuit and California law. ER 27-28. The Order noted that San Francisco had a logical nexus to the parties and the dispute, that numerous 23andMe customers initiated both arbitration and court proceedings in San Francisco and the Northern District of California, and that there was no evidence that arbitrating in San Francisco would be more expensive than litigating in federal court in San Jose. ER 28. The Court did not consider the fact that under the governing AAA Consumer Rules, consumers have the right to avoid traveling to San Francisco by requesting a "Desk Hearing" on written submissions, or that the hearing be conducted via telephone, although those facts further support its ruling.

In rejecting Plaintiffs' argument that the Arbitration Agreement's prevailing party fee-shifting provision was so unreasonable and one-sided as to shock the conscience, the Order cited a recent Northern District of California case that correctly held that prevailing party provisions are not "one-sided," and enable consumers to pursue meritorious claims by requiring the company to reimburse their attorneys' fees. ER 29, n.7. The Court also noted that 23andMe had waived any right to recover its fees and costs. ER 29.

Similarly, with respect to Plaintiffs' argument that payment of the AAA filing fee was unconscionable, the Order held that, even assuming that the fee was $975, rather than $200 as provided in the governing AAA Consumer Rules (ER 483), it would not shock the conscience – particularly when compared to litigation expenses. ER 29-30. (If payment of a filing fee rendered an arbitration agreement unenforceable, all arbitration agreements would be invalid.)

After rejecting a facially meritless contention that the language of the Arbitration Agreement applied only to claims against – but not by – 23andMe (ER 28-29), the District Court addressed Plaintiffs' subsidiary assertion that the Arbitration Agreement's exclusion of intellectual property disputes is substantively unconscionable. The Court noted that the IP carve out was not one-sided, and not unfair, because consumers had intellectual property rights under the TOS and could "avail themselves of the carve-out for intellectual property disputes." ER 29.

In describing the applicable legal standards, the Order also noted that "the Supreme Court has held that parties may agree to limit the issues subject to arbitration." ER 6 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Although the Order did not need to rely on the rule, the District Court also noted that under the FAA courts must enforce arbitration provisions to the same extent that they are enforced in contracts generally, because "the FAA places arbitration agreements 'on an equal footing with other contracts.'" ER 6.

Similarly, because the District Court correctly determined that none of the provisions cited by Plaintiffs rendered the Arbitration Agreement unconscionable, it did not need to consider whether the provisions Plaintiffs contended were unconscionable were severable from the Agreement.

## IV.   <u>SUMMARY OF ARGUMENT</u>

Plaintiffs' attempt to bar enforcement of the Arbitration Agreement suffers from a variety of individual defects, but the core problem that permeates the Opening Brief is a failure to come to grips with – or even acknowledge – fundamental changes in federal arbitration law wrought by the Supreme Court cases decided under the FAA. That failure has several fatal consequences.

First, it leads Plaintiffs to make unconscionability arguments that are based on TOS provisions that are not part of the Arbitration Agreement, and are therefore

irrelevant to the unconscionability analysis. Second, the Opening Brief relies heavily on policy arguments that the Supreme Court has held are preempted by the FAA. Third, Plaintiffs rely on cases that have been superseded by controlling authority, or are otherwise inapposite. Most important, the Opening Brief's failure to acknowledge the impact of the Supreme Court cases enables Plaintiffs to cast a blind eye to the rule that provisions included in arbitration agreements must be enforced if – as is true here – such terms are enforced in other contracts.

The District Court's ruling should also be affirmed, independently, because the Arbitration Agreement is not substantively unconscionable as a matter of California law. The AAA rules are universally recognized as neutral and fair, and contain specialized procedures that apply in consumer cases. Nothing in the Arbitration Agreement is such an extreme, one-sided departure from normal practices that shocks the conscience. To the contrary, the provisions Plaintiffs contend are unconscionable are both ubiquitous and enforced by California courts as a matter of course.

Plaintiffs' attempt to argue that the Arbitration Agreement is unconscionable based on the statute of limitations and contract-modification provisions of the TOS, which are not part of the Arbitration Agreement, is barred by black letter law. Under controlling Supreme Court authority, enforceability determinations must be made on the basis of the terms of the arbitration agreement itself. Courts

may not consider terms outside the arbitration agreement, but the provisions outside the Arbitration Agreement are not unconscionable under California law in any event.

As the District Court correctly determined, the Arbitration Agreement's provision entitling the prevailing party to attorneys' fees is not extreme, one-sided or shocking to the conscience. Such provisions are routinely included in contracts, and routinely enforced by California courts. Indeed, California has a statute, Cal. Civ. Code § 1717, that is dedicated primarily to enforcement of contract provisions that entitle the prevailing party to attorneys' fees and costs. The prevailing party clause is bilateral, not "one-sided," enhances the ability of 23andMe's customers to pursue meritorious claims, and provides them with ready access to a deep pocket when they do so. Moreover, 23andMe has disclaimed any right to pursue attorneys' fees.

Apart from the unconscionability analysis that the District Court correctly performed as a matter of state law, the prevailing party clause in the Arbitration Agreement must be enforced as a matter of federal arbitration law because such terms are enforced in California contracts generally. The Supreme Court has been unequivocally clear on this point: Terms that are enforced when included in other contracts must be enforced in the same fashion, and to the same degree, when they are included in arbitration contracts. This Court has followed suit.

17

Plaintiffs' arguments regarding the selection of San Francisco as a venue are equally wide of the mark, for many of the same reasons. Venue selection clauses are routinely included in arbitration agreements, and cannot be regarded as extreme departures from normal business practices that shock the conscience. While that fact is decisive, it is also clear that there is a close nexus between the forum and the parties; that Plaintiffs and other 23andMe customers chose to file their claims in the Northern District of California; and that the applicable AAA rules enable consumers to avoid travel to San Francisco by requesting a hearing on written submissions, and/or by phone.

In addition to demonstrating that the forum selection clause is not substantively unconscionable, the fact that such clauses are generally enforced by California courts again requires that they be enforced in arbitration agreements, as a matter of Supreme Court authority and federal arbitration law.

Plaintiffs' contention that the Arbitration Agreement is unconscionable because it carves out intellectual property claims is even more of a stretch. Arbitration agreements can specify – and limit – the claims to be arbitrated, and the notion that excluding IP claims in the circumstances of this case is so extreme, one-sided and unfair as to shock the conscience is nonsensical. This is not a situation in which the exclusion of claims from arbitration arms one side, disarms the other side, or in any way tips the balance of power in the arbitration. The

impact of the carve-out in this dispute is **non-existent**, and it would be a non-factor in at least 99.9% of the disputes between 23andMe and its customers regarding the purchase of the PGS. Moreover, as the District Court noted, the clause is not one-sided because customers have IP rights under the TOS.

Nor is there any colorable argument that the exclusion of IP claims from arbitration is arbitrary or unreasonable. Leaving copyright and patent claims in the federal courts makes sense from all perspectives because that is where they are traditionally litigated, with a right of appeal to the Federal Circuit.

## V. ARGUMENT

### A. CONTROLLING LEGAL PRINCIPLES AND RULES

Enforceability of the Arbitration Agreement depends on federal arbitration law under the FAA, which preempts inconsistent state law, and on California law regarding enforcement of contracts. To the extent California law conflicts with the FAA, or its application has a disproportionate impact on agreements to arbitrate, federal law controls. The Arbitration Agreement must be enforced both as a matter of federal arbitration law, and because it is not substantively unconscionable under state law.

#### 1. The FAA Mandates That An Arbitration Agreement Be Enforced On The Same Terms As Other Contracts

As the Supreme Court has repeatedly noted, the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 132

S. Ct. 23, 25 (2011).  Accordingly, "courts must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).  Enforcement is required "notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Section 2 of the FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation **of any contract**."  9 U.S.C. § 2 (emphasis added).  "By enacting § 2, . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'"  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Accordingly, although Section 2 of the FAA preserves certain state-law contract defenses, it forbids discrimination against enforcement of arbitration agreements.  If a provision would generally be enforceable in "any contract," it must be enforced in an arbitration agreement.

Moreover, Section 2 of the FAA forbids application of contract "defenses that apply only to arbitration [agreements] or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *Concepcion*, 131 S. Ct. at 1746. Application of such defenses to arbitration agreements is precluded because it

would "place arbitration clauses on an unequal 'footing' [with other contracts], directly contrary to the Act's language and Congress' intent." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995).

Thus, "[a] court may not, [] in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). "Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Id*.

In 2011 the Supreme Court clarified, underscored and expanded these controlling principles in *Concepcion*, which held that the FAA preempted a long-standing California rule that had invalidated class-action waivers in consumer arbitration contracts. The California Supreme Court had ruled in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005) that such waivers were both unconscionable and contrary to public policy, reasoning that they enabled companies to escape liability for misconduct that would not be pursued via individual claims for small dollar amounts, and arguably deprived consumers of an effective remedy. In rejecting that unconsionability analysis – which was **far** more compelling than the arguments made by Plaintiffs on this appeal – the Supreme

21

Court held that the policy of the FAA and language of Section 2 of the Act trumped such considerations. *See Concepcion*, 131 S. Ct. 1746-53.

In addition to abrogating *Discover Bank*, and a multitude of California cases that had consistently applied the *Discover Bank* rule, *Concepcion* reversed this Court's decision in *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 853-59 (9th Cir. 2009). *Laster* and its progeny had held that Section 2 of the FAA did not preempt the *Discover Bank* rule because the rule embodied a defense – unconscionability – that applied to contracts generally, and did not discriminate against arbitration agreements. The Supreme Court struck down the rule, despite that fact, because its application had a disproportionate impact on arbitration agreements.

In so doing, *Concepcion* reiterated *Perry*'s mandate that "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable.'" 131 S. Ct. at 1747 (quoting *Perry*, 482 U.S. at 492 n.9). It then held that even generally applicable state-law rules, including rules that "appl[y] the general principle of unconscionability," are preempted if "[i]n practice" they have "a disproportionate impact on arbitration agreements" or "interfere[] with fundamental attributes of arbitration and thus create[] a scheme inconsistent with the FAA." *Id.* at 1747-48.

After *Concepcion*, the fact that contract terms are determined to be unenforceable in non-arbitration contexts is not *ipso facto* sufficient to refuse

22

enforcement of an arbitration provision. Even in those circumstances, the contract defense is preempted by the FAA if it is applied in a manner that has a disproportionate impact on arbitration agreements.

As this Court has held, *Concepcion* means "what its plain language says: Any general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA." *Mortensen v. Bresnan Commc'ns, LLC,* 722 F.3d 1151, 1159 (9th Cir. 2013). *Mortensen* further emphasized that after *Concepcion* arbitration provisions are, if anything, entitled to **preferred** enforcement: "*Concepcion* crystalized the directive . . . that the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Id.* at 1159-60.

### 2. A Contract Term Is Substantively Unconscionable Only If It Is Such An Extreme Departure From Normal Practices, And So One-Sided, That It Shocks The Conscience

Under California law, substantive unconscionability focuses on "whether the terms of the agreement are such an extreme departure from common business practice, and so one-sided as to 'shock the conscience.'" *Belton v. Comcast Cable Holdings, LLC,* 151 Cal. App. 4th 1224, 1247 (2007); *Cal. Grocers Ass'n v. Bank of Am.,* 22 Cal. App. 4th 205, 214-15 (1994); *Koehl v. Verio, Inc.,* 142 Cal. App. 4th 1313, 1340 (2006); *Am. Software, Inc. v. Ali,* 46 Cal. App. 4th 1386, 1391 (1996). If the term at issue is not such an extreme departure from customary practice that it shocks the conscience, it must be enforced.

23

By definition, terms that are routinely included in contracts – including prevailing party fee-shifting and forum selection clauses – are not extreme departures from normal business practice. Nor do they shock the conscience.

Substantive unconscionability also focuses on "the one-sidedness of the contract terms." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 854 (2001). "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to shock the conscience.'" *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). As the California cases make clear, the fact that a term may be one-sided or unreasonable provides no basis for concluding that it is unconscionable. Judicial intervention is thus not appropriate unless the term goes far past unreasonableness. *See, e.g.*, *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322-23 (2005); *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 647 (2010); *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 809 (2006); *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 483 (2006); *Am. Software*, 46 Cal. App. 4th at 1391.

### B. EACH OF THE PROVISIONS OF THE ARBITRATION AGREEMENT MUST BE ENFORCED – UNDER BOTH FEDERAL AND STATE LAW

#### 1. The Arbitration Agreement's "Prevailing-Party" Fee-Shifting Clause Poses No Obstacle To Enforcement

Citing *Armendariz v. Foundation Health Psychare Services, Inc.*, 24 Cal. 4th 83 (2000), and cases relying on it, Plaintiffs contend that the Arbitration

Agreement's reciprocal prevailing party fee-shifting clause is substantively unconscionable because the risk that the customer "may have to bear substantial costs [] deters the exercise of the constitutional right of due process.'" OB at 27-30.[4] That contention fails on multiple grounds.

As an initial matter, "[t]he 'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.'" *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Green Tree Fin. Corp-Alabama v. Randolph*, 531 U.S. 79, 90-91 (2000)).[5]

In any event, under general California contract law, "**there is nothing . . . unconscionable about prevailing party clauses**." *Lennar Homes of Cal., Inc. v. Stephens*, --- Cal. App. 4th ---, 2014 WL 7184219, at *12 (Cal. Ct. App. Dec. 18, 2014) (emphasis added) (certified for publication). Rather, "a reciprocal, prevailing-party attorney fees clause in a contract . . . is clearly enforceable under

---

[4] Citing *Armendariz*, 24 Cal. 4th at 110; *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010); *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 89-91 (2003); *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554 (2009); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 88 (2014); *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138, 1147 (2012).

[5] Such a risk is particularly speculative here given that the applicable AAA Consumer Rules require 23andMe to advance all arbitration-related expenses except for the initial $200 filing fee. ER 483.

California law." *Applera Corp. v. MP Biomedicals, LLC*, 173 Cal. App. 4th 769, 790 (2009). Indeed, Cal. Civ. Code § 1717 specifically authorizes courts to enforce contractual provisions requiring payment of attorneys' fees to the prevailing party in a dispute. Thus, as the California Supreme Court and Court of Appeal have consistently held, "'[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves." *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998).[6]

Under the FAA, the fact that California courts routinely enforce prevailing party clauses in non-arbitration contracts mandates enforcement of such clauses when they are included in arbitration contracts. *See Concepcion*, 131 S. Ct. at 1746-48; *Perry*, 482 U.S. at 492 n.9; *Mortensen*, 722 F.3d at 1159.

The fact that prevailing party clauses are routinely included in contracts and held to be valid and enforceable, also precludes any finding that the prevailing party clause here is "such an extreme departure from common business practice, and so one-sided as to 'shock the conscience.'" *Belton*, 151 Cal. App. 4th at 1247.

Moreover, the prevailing party clause here is reciprocal, not one-sided, because it applies equally to both parties. *See, e.g.*, *Trend Homes, Inc. v. Super.*

---

[6] *See, e.g.*, *Malibou Lake Mountain Club, Ltd. v. Smith*, 18 Cal. App. 3d 31, 35 (1971); *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1341 (1992); *Lockton v. O'Rourke*, 184 Cal. App. 4th 1051, 1076 (2010); *EnPalm, LLC v. Teitler Family Trust*, 162 Cal. App. 4th 770, 781 (2008); *Skyway Aviation, Inc. v. Troyer*, 147 Cal. App. 3d 604, 610 (1983).

*Ct.*, 131 Cal. App. 4th 950, 962 (2005) ("The provision, however, cannot be found unconscionable merely because real parties' exposure includes possible responsibility for payment of the referee's fees should they lose; there is no one-sidedness, as Trend is also exposed to such a possibility."). "[T]he point of a fee shifting clause is that if Plaintiff's claim proves meritorious, *his* fees would be reimbursed by Defendant. The clause could thus facilitate his ability to vindicate his rights." *King v. Hausfeld*, 2013 WL 1435288, at *18 (N.D. Cal. Apr. 19, 2013) (italics in original).

*Carmona* and *Samaniego*, cited by Plaintiffs, are irrelevant. Both of those cases involved **one-way** fee shifting clauses that allowed only the employers to recover their attorneys' fees and costs. *See Carmona*, 226 Cal. App. 4th at 88; *Samaniego*, 205 Cal. App. 4th at 1147.

Plaintiffs' citation to *Armendariz* and related cases is equally unavailing. Long before *Concepcion* and similar Supreme Court cases, *Armendariz* held that, as a matter of California public policy, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement . . . cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." 24 Cal. 4th at 110-11. In addition to be superseded, *Armendariz* is based on the

employment context and the "imposition" of a clause as a condition of employment, which is not an issue here.

Moreover, as noted above, under general California contract law, "there is nothing . . . unconscionable about prevailing party clauses," *Lennar Homes*, 2014 WL 7184219, at *12, and "a reciprocal, prevailing-party attorney fees clause in a contract . . . is clearly enforceable under California law," *Applera*, 173 Cal. App. 4th at 790. Because any ruling that the Arbitration Agreement's prevailing party clause is unconscionable would be contrary to general California contract law, the FAA requires that the clause be enforced notwithstanding *Armendariz*'s reasoning or holding. *See Concepcion*, 131 S. Ct. at 1746-48; *Perry*, 482 U.S. at 492 n.9; *Mortensen*, 722 F.3d at 1159.

This Court's earlier decisions in *Circuit City* and *Ting*, which held that the *Armendariz*-derived rule declaring fee-shifting/sharing provisions in arbitration agreements unconscionable was not preempted by the FAA "[b]ecause unconscionability is a defense to contracts generally," *Circuit City*, 279 F.3d at 895; *Ting*, 319 F.3d at 1151, provide no support for Plaintiffs' position. Both cases were decided long before *Concepcion* and this Court's more recent decision in *Mortensen*.

The reasoning of *Ting* and *Circuit City* is clearly irreconcilable with *Concepcion* and *Mortensen*, which made clear that any general state-law contract

defense based in unconscionability that has "a disproportionate impact on arbitration agreements" is preempted by the FAA. *Concepcion*, 131 S. Ct. at 1747; *Mortensen*, 722 F.3d at 1159.[7]  The conflict with *Concepcion* is decisive because "where the reasoning or theory of [] prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

The *Armendariz*-derived unconscionability analysis of prevailing party clauses has been applied **exclusively** to arbitration agreements.[8]  By its terms, it "disproportionally affects arbitration agreements and thus is preempted by the FAA following *Concepcion*." *Mortensen*, 722 F.3d at 1161.

---

[7] *Pokorny*, which also pre-dates *Concepcion*, did not address FAA preemption, but relied on *Armendariz*, *Ting* and *Circuit City* to hold that a fee-shifting clause in an arbitration agreement was substantively unconscionable. 601 F.3d at 1004.  Its reasoning is also irreconcilable with *Concepcion*.  *Guitierrez* and *Parada*, which did address whether the FAA preempts *Armendariz*'s ban on fee-shifting/sharing clauses, *Gutierrez*, 114 Cal. App. 4th at 281-82; *Parada*, 176 Cal. App. 4th at 1578, likewise pre-date *Concepcion*, and their interpretation of the FAA is irrelevant in any event, *see, e.g.*, *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1202 (2012) ("The decision of the state court found the FAA's coverage to be more limited than mandated by this Court's previous cases.  The decision of the State Supreme Court of Appeals must be vacated.").

[8] 23andMe has been unable to locate a single decision applying California law that has ever held that a reciprocal prevailing party clause in a non-arbitration agreement was substantively unconscionable.

### 2. The Arbitration Agreement's Forum Selection Clause Poses No Obstacle To Enforcement

Forum selection clauses are routinely included and enforced in California contracts. Plaintiffs nevertheless argue that the Arbitration Agreement's forum selection clause is substantively unconscionable because the added expense and burden of having to travel to San Francisco over small amounts would deter non-resident claimants from pursuing their claims. OB at 32-37.

That argument fails because under the FAA provisions that are enforced in other contracts must be enforced in arbitration agreements. It further fails because inconvenience and additional expense are insufficient to invalidate a forum selection clause under California law, and because the applicable AAA rules alleviate inconvenience and expense in any event.

Under general California contract law, a "forum selection clause is presumed valid and will be enforced unless the plaintiff shows that enforcement of the clause would be unreasonable under the circumstances." *Intershop Commc'ns v. Super. Ct.*, 104 Cal. App. 4th 191, 198 (2002).

Importantly, "**neither inconvenience nor additional expense in litigating in the selected forum is part of the test of unreasonability**." *Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*, 12 Cal. App. 4th 1666, 1679 (1993) (emphasis added). As the California Supreme Court long ago held, "'[m]ere inconvenience or additional expense is not the test of unreasonableness." *Smith, Valentino &*

*Smith, Inc. v. Super. Ct.*, 17 Cal. 3d 491, 496 (1976); *see, e.g.*, *Intershop*, 104 Cal. App. 4th at 199; *Olinick v. BMG Entm't*, 138 Cal. App. 4th 1286, 1294 (2006); *CQL Original Prods., Inc. v. Nat'l Hockey League Players' Ass'n*, 39 Cal. App. 4th 1347, 1354 (1995); *Lu v. Dryclean-U.S.A. of Cal., Inc.*, 11 Cal. App. 4th 1490, 1493 (1992); *Furda v. Super. Ct.*, 161 Cal. App. 3d 418, 426-27 (1984).

"California courts routinely enforce forum selection clauses even where the chosen forum is far from the plaintiff's residence," *Net2Phone, Inc. v. Super. Ct.*, 109 Cal. App. 4th 583, 588 (2003), and the forum selection clause here is of the sort often found in contracts and routinely upheld by California courts. Accordingly, the Arbitration Agreement's inclusion of such a standard form clause is not an extreme departure from normal business practice or shocking to the conscience.

Moreover, selection of San Francisco as the venue for disputes relating to the purchase of the PGS is reasonable by any standard. The contract at issue was drafted in the Bay Area and governed by California law; is performed by 23andMe in the Bay Area; and 23andMe's principal place of business is in the Bay Area. All of the allegedly wrongful conduct occurred in the Bay Area, and most, if not all, of the fact witnesses and evidence pertaining to Plaintiffs' claims are located there. As the California law applicable to forum selection clauses makes clear, under

these circumstances the selection of San Francisco as a forum is beyond legitimate challenge.[9]

Any argument that the forum selection clause is so extreme, unreasonable and one-sided as to shock the conscience is **also** directly foreclosed by the California Supreme Court's holding in *Smith* that "'[m]ere inconvenience or additional expense is not the test of unreasonableness." 17 Cal. 3d at 496. Indeed, the California Court of Appeal has repeatedly rejected the **exact** same argument that Plaintiffs make here.

In *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1 (2001), the court rejected the "contention that [a forum selection] clause should not be enforced [] because it would be patently unreasonable to require [the plaintiff] or

---

[9] *See, e.g.*, *Olinick*, 138 Cal. App. 4th at 1305 (New York forum was reasonable because employer was located in New York, which provides litigants substantive rights comparable to California); *Intershop*, 104 Cal. App. 4th at 200 (Germany forum was reasonable where California resident purchased stock "in a German corporation subject to German securities regulations and where the parties agreed that German law would apply"); *CQL Original Prods.*, 39 Cal. App. 4th at 1358 (Canada forum was reasonable given that "there is no serious contention Canadian jurisprudence cannot provide these litigants with substantial justice"); *Furda*, 161 Cal. App. 3d at 426 (Michigan forum was reasonable because Michigan was defendant's "domicile, and the contract was negotiated and consummated there," and "all the material misrepresentations alleged to have induced" plaintiffs "took place in Michigan and can best be proved there"); *Cal-State Bus. Prods.*, 12 Cal. App. 4th at 1682 (New York forum was reasonable given that New York "is a major commercial center with propinquity to Ricoh's headquarters"); *Lu*, 11 Cal. App. 4th at 1493 n.2 ("Given the nationwide scope of their operations, it is perfectly reasonable for defendants to have desired to limit the fora in which they are potentially subject to suit to their nationwide hub in Miami").

other AOL customers who form the putative class to travel to Virginia to litigate the relatively nominal individual sums at issue." *Id.* at 18. *America Online* further rejected the argument "that expense in litigating in the selected forum can be considered if it exceeds the amount in controversy or at least renders the choice to litigate 'impractical.'" *Id.* at 19. As the court stated:

> [T]he additional cost or inconvenience necessitated by litigation in the selected forum is not part of the calculus when considering whether a forum selection clause should be enforced. Our Supreme Court has put this matter to rest in *Smith* . . . .

*Id.*[10]

Similarly, *Furda* rejected the plaintiff's argument that "their inconvenience and financial burden compels a California forum," and held that a Michigan forum selection clause was reasonable. 161 Cal. App. 3d at 426-27; *see also Cal-State Bus. Prods.*, 12 Cal. App. 4th at 1683-84 ("The plaintiff is left with its claim that New York is a forum which is unavailable or unable to accomplish substantial justice. At most, the plaintiff here has shown increased inconvenience and expense, which is insufficient.").

---

[10] *America Online* ultimately held that the forum selection clause at issue was unenforceable, but did so for reasons unrelated to the burden and expense of having to travel to a distant forum to litigate low value consumer claims, reasons which are inapplicable here. *See* 90 Cal. App. 4th at 13-18 (forum selection clause requiring litigation in Virginia state court and application of Virginia law was unenforceable as contrary to California public policy because, unlike California law, Virginia law does not allow consumer lawsuits to be brought as class actions and the available remedies are more limited than those afforded by California law).

Furthermore, Plaintiffs' own actions demonstrate that San Francisco is a reasonable forum.  As the District Court noted:

> Plaintiffs filed six of the nine related cases in California and voluntarily transferred all cases to San Jose, California.  Other plaintiffs with similar claims initiated three arbitration proceedings with the AAA in San Francisco.  The fact that numerous plaintiffs chose to assert their claims in Northern California suggests that the stated forum is not overly burdensome or unreasonable.

ER 28.

Plaintiffs would not even be required to travel to San Francisco to arbitrate their claims.  As discussed at pages 9-10 above, under the applicable AAA rules, consumers can request a telephonic hearing in lieu of an in-person hearing, or, in the alternative, can request a "Desk Arbitration," in which the arbitrator decides the claim on the basis of written submissions.  ER 475.

Moreover, as the District Court noted, none of the Plaintiffs – the vast majority of whom reside in California[11] – presented **any** "specific evidence regarding [their] likely costs of arbitrating in San Francisco (particularly relative to the costs of litigating in federal court in San Jose)," or any specific evidence regarding their financial circumstances or purported inability to travel to San Francisco.  ER 28.  That failure is independently decisive because when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be

---

[11] ER 228-230, ¶¶ 30, 35, 38, 41; ER 250, ¶ 13; ER 315, ¶ 11; ER 363-364, ¶¶ 8-10; ER 396, ¶ 5.

prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92.

Plaintiffs' reliance on cases that predate *Concepcion* and *Mortensen* is, again, wholly unavailing. The cases cited by Plaintiffs (*see* OB at 32-37) were decided before the Supreme Court, and then this Court, held that the FAA bars discrimination against provisions in arbitration agreements. Relying on superseded law, those cases applied a different enforceability standard to forum selection clauses in arbitration agreements than that applicable to forum selection clauses in non-arbitration agreements. As *Concepcion* and *Mortensen* subsequently made clear, provisions in arbitration contracts must be enforced to the same extent that they are enforced in non-arbitration agreements, and the FAA preempts all general state-law contract defenses based in unconscionability that have "a disproportionate impact on arbitration agreements or "derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746-47; *Mortensen*, 722 F.3d at 1159. While further analysis superfluous, it is also clear that the cases on which Plaintiffs rely are also factually distinguishable in numerous respects.

For example, *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909-10 (2001), was decided ten years before *Concepcion* and twelve years before *Mortensen*. It held that a forum selection clause in an arbitration provision was unconscionable

because it required California franchisees to travel to Utah, but failed even to

mention the California Supreme Court's holding in *Smith* that neither

inconvenience nor additional expense in litigating in the selected forum is part of

the calculus when considering the reasonableness of a forum selection clause.

Indeed, *Bolter* did not mention **any** of the California cases addressing forum

selection clauses.[12]

     *Pinedo v. Premium Tobacco Stores, Inc.*, 85 Cal. App. 4th 774, 781 (2000),

was decided even earlier, was decided in the employment context, and noted in

*dictum* that a California employee is "disadvantaged [] by being required to

arbitrate in Oakland, California."  It contains no discussion of the California law

generally applicable to forum selection clauses, and is contrary to non-arbitration

cases like *Olinick*, which held that a forum selection clause that required a

---

[12] *Bolter* is also distinguishable because the arbitration provision at issue and its forum selection clause were imposed on **preexisting** California franchisees.  As the *Bolter* court noted, "[w]hen petitioners first purchased their" franchises, the franchisor "was headquartered in California, and the franchise agreement did not contain an arbitration provision.  Thus, they never anticipated [the franchisor] would relocate its headquarters to Utah and mandate that all disputes be litigated there."  87 Cal. App. 4th at 909.  By contrast, 23andMe customers were all on notice before they accepted the TOS that all disputes would be resolved by arbitration in San Francisco.  *See, e.g.*, *Intershop*, 104 Cal. App. 4th at 201-02 ("A forum selection clause within an adhesion contract will be enforced 'as long as the clause provided adequate notice to the [party] that he was agreeing to the jurisdiction cited in the contract.'").

California employee to travel to New York was reasonable. *Olinick*, 138 Cal. App. 4th at 1305.

*Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 117 (N.D. Cal. 2002), is inapposite for the same reasons. It was decided long before *Concepcion* and *Mortensen*, and contains no discussion of the California law generally applicable to forum selection clauses, and instead simply relied on *Bolter*.[13] Although *Newton v. American Debt Services, Inc.*, 549 F. App'x 692, 694 (9th Cir. 2013), was decided after *Concepcion* and *Mortensen*, it is an unpublished decision that is devoid of any analysis or discussion of the California law generally applicable to forum selection clauses. In ruling that a forum selection clause in an arbitration provision was unconscionable because it required California debtors to travel to Oklahoma, *Newton* simply relied on *Bolter*.

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1288-90 (9th Cir. 2006), was also decided before *Concepcion* and *Mortensen,* and also failed to address the California Supreme Court's decision in *Smith.* It simply relied on *Bolter* and *Comb*. Although *Nagrampa* cited *America Online*, it failed to address or consider that decision's explicit rejection of the argument that the "expense in litigating in

---

[13] *Comb* even found the fact that the selected forum was near PayPal's principal place of business was evidence of unconscionability, which is directly contrary to numerous California cases holding that a corporate defendant's principal place of business is a reasonable forum. *See, e.g.*, *Intershop*, 104 Cal. App. 4th at 200; *Furda*, 161 Cal. App. 3d at 426; *Lu*, 11 Cal. App. 4th at 1493 n.2.

the selected forum can be considered if it exceeds the amount in controversy or at least renders the choice to litigate 'impractical.'" *Am. Online*, 90 Cal. App. 4th at 19. *Nagrampa* also cited *Intershop*, but failed to mention its holding that "[n]either inconvenience nor the additional expense of litigating in the selected forum are factors to be considered." *Intershop*, 104 Cal. App. 4th at 199.[14]

*Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 561 (2005), was also decided long before *Concepcion* and *Mortensen*. It mentioned *Smith*'s holding but failed to apply it, and is directly contrary to *America Online*. *America Online* specifically rejected in the non-arbitration context the contention that a forum selection clause should not be enforced "because it would be patently unreasonable to require . . . [California] customers who form [a] putative class to travel to Virginia to litigate [] relatively nominal individual sums." *Am. Online*, 90 Cal. App. 4th at 18.

**All** of the cases cited by Plaintiffs discriminated against arbitration agreements by imposing a far more stringent enforceability standard to forum selection clauses in arbitration agreements. None survives *Concepcion*, *Mortensen*

---

[14] *Nagrampa*, like *Bolter*, is also distinguishable in any event because the plaintiff "did not have reason to expect that the arbitration would take place in Boston." 469 F.3d at 1290. As *Nagrampa* noted, the franchisee "entered into the franchise agreement in 1998, when [Cal. Bus. & Prof. Code §] 20040.5 was still considered good law and out-of-state forum selection provisions in franchise agreements were not enforceable under California law." *Id.* The plaintiff "thus had no reason to expect that arbitration would take place in Boston. To the contrary, she had every reason to expect that the arbitration, if any, would take place in California, in accordance with California law, as expressly raised in the circular." *Id.* at 1291.

and their progeny, which effected a fundamental change in the governing law. *See* pages 20-23 above.

After reviewing the cases now cited by Plaintiffs, one federal court hit the nail on the head by noting:

> The cases show that California unconscionability law on the reasonableness of contractual forum-selection clauses is applied more strictly to arbitration contracts than to other contracts so as to disfavor arbitration. Under *Concepcion*, § 2 of the FAA preempts this application of state law.

*James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020, 1036 (S.D. Tex. 2012).

### 3. The Arbitration Agreement's Exclusion Of IP Claims Poses No Obstacle To Enforcement

Citing *Armendariz*, and cases relying on it, Plaintiffs assert that the Arbitration Agreement is substantively unconscionable because it excludes intellectual property related disputes. OB at 37-41.[15] That contention fails on a number of grounds, beginning with the obvious fact that in the circumstances of this case exemption of IP claims from arbitration is a nonfactor that could never be so extreme, one-sided and unfair as to shock the conscience.

In contrast to the formidable trade-secret-related claims that frequently are asserted by employers against employees in employment disputes, intellectual

---

[15] Citing *Armendariz*, 24 Cal. 4th at 117-18, 120; *Carmona*, 226 Cal. App. 4th at 86; *Nagrampa*, 469 F.3d at 1285; *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004); *Pokorny*, 601 F.3d at 1001; *Samaniego*, 205 Cal. App. 4th at 1147; *O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 274 (2003).

property claims would virtually **never** be even a minor factor in disputes relating to the purchase of the PGS. Leaving any such claims in court, where they are traditionally litigated, does not confer any advantage in such disputes, and there is nothing remotely unreasonable or unfair in doing so.

In the employment context, and before the Supreme Court decided *Concepcion* and other cases underscoring the rule that arbitration agreements must normally be enforced according to their terms, *Armendariz* indicated that an arbitration agreement is substantively unconscionable if it requires arbitration of the claims more likely to be brought by the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by the stronger party. *See* 24 Cal. 4th at 119; *Fitz*, 118 Cal. App. 4th at 725.

Even assuming (1) that IP claims were a significant factor in disputes regarding the purchase of the PGS, and (2) that it is more likely that such claims would be brought by 23andMe, there would be no basis for ruling that the Arbitration Agreement is substantively unconscionable. *See, e.g.*, *Lombardi v. DirecTV, Inc.*, 546 F. App'x 715, 716 (9th Cir. 2013) ("That customers have to arbitrate their claims for injunctive relief against DirecTV whereas DirecTV is unlikely to seek injunctive relief from its customers does not make the arbitration agreement unconscionable.").

Moreover, this case is not like *Armendariz*, *O'Hare* and *Pokorny*, where the arbitration agreement was explicitly limited in scope to claims that only one party could bring, and did not cover any claims that the other party might bring. *See Armendariz*, 24 Cal. 4th at 120; *O'Hare*, 107 Cal. App. 4th at 271, 275; *Pokorny*, 601 F.3d at 1000-01. The exclusion here of IP-related claims is neutral, permitting **both** 23andMe **and** consumers to pursue IP-related claims in court.

Nor would the analysis change if IP claims were more likely to be near the heart of the dispute – *e.g.,* disputes between franchisors and franchisees regarding the operation of a business, not the purchase of a consumer product. There would still be no basis for an unconscionability determination. *See Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 712 (2011) (exclusion of IP-related claims was not unconscionably one-sided, where exclusion allowed "a party" to go to court, and it did not apply solely to the claims of the franchisor). As the District Court correctly observed, under the TOS, consumers retain rights to their genetic and self-reported information and user content, and thus may also avail themselves of the IP exclusion. ER 29; *see, e.g.*, ER 45-46, § 13 ("Material Provided to 23andMe – Your Proprietary Rights").[16]

---

[16] Thus, this case is not like *Carmona*, *Nagrampa* and *Samaniego*, where the arbitration agreement explicitly covered any and all claims the plaintiff might have against the defendant, and the clause excluding certain claims explicitly applied only to the defendant. *See Carmona*, 226 Cal. App. 4th at 86; *Nagrampa*, 469 F.3d at 1286-87; *Samaniego*, 205 Cal. App. 4th at 1147.

In any event, parties – including companies – have the right "to limit the issues subject to arbitration." *Concepcion*, 131 S. Ct. at 1478; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). As the California Supreme Court recently emphasized, "arbitration clauses may be limited to a specific subject or subjects," and "are not required to 'mandate the arbitration of all claims between the parties in order to avoid invalidation on grounds of unconscionability.'" *Pinnacle*, 55 Cal. 4th at 248 (alteration removed).

"A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to 'shock the conscience.'" *Id.* at 246. Plaintiffs could not possibly show that the exercise of the right to limit the issues subject to arbitration by carving out IP issues that are extremely unlikely to have any impact on disputes regarding PGS purchases is "such an extreme departure from common business practice, and so one-sided as to 'shock the conscience.'" *Belton*, 151 Cal. App. 4th at 1247.

Moreover, as *Armendariz* itself emphasized, the unconsionability analysis it applied was "peculiar to the arbitration context." 24 Cal. 4th at 119. *Concepcion* and *Mortensen* have since made absolutely clear that "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable.'" *Concepcion,* 131 S. Ct. at 1747. Again, the FAA preempts all general state-law contract defenses based in

unconscionability that have "a disproportionate impact on arbitration agreements" or "derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746-47; *Mortensen*, 722 F.3d at 1159.

Following *Concepcion*, the Tenth Circuit recently held that the FAA preempted a New Mexico rule that, like the *Armendariz* rule, had provided that an arbitration provision is unconscionable if it applies to claims that the weaker party is more likely to bring, but excludes the claims that the stronger party is more likely to bring. *THI of N.M. at Hobbs Ctr., LLC*, 741 F.3d 1162, 1168-70 (10th Cir. 2014). The Tenth Circuit correctly recognized that the New Mexico rule "derives its meaning from the fact that . . . an arbitration agreement [is at issue] because the heart of the asserted unfairness is the disparity in what claims must be *arbitrated.*" *Id.* at 1169 (italics in original). "[T]he only way the arrangement can be deemed unfair or unconscionable is by assuming the inferiority of arbitration to litigation." *Id.*

The *Armendariz* analysis was also inappropriately based on a perceived inferiority of arbitration, not on principles that apply to contracts generally:

> Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee. . . .
>
> The perceived advantages of the judicial forum for plaintiffs include the availability of discovery and the fact that courts and juries are

viewed as more likely to adhere to the law and less likely than arbitrators to "split the difference" between the two sides, thereby lowering damages awards for plaintiffs.

24 Cal. 4th at 117, 119.

Any rule that requires both parties' claims to be equally subject to arbitration to avoid a finding of unconscionability would necessarily derive its meaning from the fact that an agreement to arbitrate is at issue. Under *Concepcion* and *Mortensen*, such a rule is therefore preempted by the FAA.

### 4. The Three Challenged Clauses Are Easily Severable, Both Individually And In Combination

Even if the Arbitration Agreement's prevailing party, forum selection and IP carve-out clauses were substantively unconscionable, the Agreement would still be enforceable. Under California law, unconscionable clauses can be severed. Cal. Civ. Code § 1670.5(a); *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1477-78 (2009). "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 986 (2010).

The strong federal policy in favor of arbitration also requires severance of any clauses determined to be unconscionable, and enforcement of the remainder of the Arbitration Agreement. The TOS also contemplates that course, by providing that "[i]f any portion of these TOS is found to be unenforceable, the remaining portion will remain in full force and effect." ER 53, § 28(j).

As a multitude of cases make clear, prevailing party, forum selection and IP carve-out clauses are easily severable from arbitration provisions. *See, e.g.*, *Bigler v. Harker Sch.*, 213 Cal. App. 4th 727, 738 (2013) (prevailing party clause "could easily have been severed"); *Grabowksi v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (severing IP carve-out, prevailing party, and confidentiality clauses and enforcing remainder of arbitration agreement); *Bolter*, 87 Cal. App. 4th at 911 (Utah venue selection clause was "clearly severable from the remainder of the arbitration agreement"); *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1134 (C.D. Cal. 2006) (severing prevailing party and New Jersey venue selection clauses and enforcing remaining of arbitration provision); *Gutierrez v. Sea World LLC*, 2014 WL 4829087, at *5 (S.D. Cal. Sept. 26, 2014) ("Even assuming the exclusion relating to intellectual property is unjustifiably one-sided and therefore substantively unconscionable, no claims at issue here fall under that exclusion. Therefore, the offending provision of the agreement may be severable.").[17]

---

[17] *See also McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 102 (2003) ("[T]he unconscionable provision requiring payment of the fees can be severed from the arbitration agreements."); *Irwin v. UBS Painewebber, Inc.*, 324 F. Supp. 2d 1103, 1110 (C.D. Cal. 2004) ("The fee provision is easily severable from the remainder of the agreement."); *Wilmot v. McNabb*, 269 F. Supp. 2d 1203, 1212 (N.D. Cal. 2003) (severing Colorado venue selection clause and enforcing remainder of arbitration provision); *Sheikh v. Cisco Sys., Inc.*, 2009 WL 890880, at *6 (N.D. Cal. Mar. 31, 2009) ("[T]he court finds that the intellectual property carve-out provision is appropriately severed from the contract.").

Severance is especially appropriate when, as in this case, "no contract reformation is required – the offending provision can be severed and the rest of the arbitration agreement left intact." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1075 (2003). When the offending clauses "can easily be severed without affecting the remainder of the agreement, the proper course is to do so." *Dotson*, 181 Cal. App. 4th at 985.

Although they must be enforced as a matter of federal arbitration law, and are not unconscionable under California law, the clauses at issue here could easily be severed without affecting the remainder of the Arbitration Agreement. As illustrated below, severance would not require that the Agreement be rewritten or reformed to include additional terms:

> **Applicable law and arbitration.** ~~Except for any disputes relating to intellectual property rights, obligations, or any infringement claims,~~ any disputes with 23andMe arising out of or relating to the Agreement (**"Disputes"**) shall be governed by California law regardless of your country of origin or where you access 23andMe, and notwithstanding of any conflicts of law principles and the United Nations Convention for the International Sale of Goods. Any Disputes shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association, ~~to be held in San Francisco, California,~~ in English, with a written decision stating legal reasoning issued by the arbitrator(s) at either party's request~~, and with arbitration costs and reasonable documented attorneys' costs of both parties to be borne by the party that ultimately loses~~. Either party may obtain injunctive relief (preliminary or permanent) and orders to compel arbitration or enforce arbitral awards in any court of competent jurisdiction.

46

### C. PLAINTIFF'S CITATION OF PROVISIONS OUTSIDE THE ARBITRATION AGREEMENT IS LEGALLY IRRELEVANT, AND IS UNFOUNDED IN ANY EVENT

Plaintiffs' citation of § 28(d) of the TOS, which provides for a one-year statute of limitations period for any claim relating to the use of the PGS or the TOS, and § 28(h) of the TOS, which permits 23andMe to modify the TOS (OB 41-47), is fundamentally misconceived. Because those provisions are not part of, nor referenced in, the Arbitration Agreement (ER 52-53), they are irrelevant to the enforcement question as a matter of law. While further analysis is unnecessary, it is also clear that Plaintiffs' attacks on those provisions lack substantive merit.

#### 1. Because An Arbitration Agreement Is Severable From The Remainder Of The Contract, A Party Cannot Rely On Provisions Outside The Arbitration Agreement In Resisting Enforcement

The Supreme Court has distinguished challenges to an arbitration agreement from challenges to the contract in which it is contained, and held that only the first of the two types of challenges is relevant to enforcement of arbitration agreements. "One type challenges specifically the validity of the agreement to arbitrate," while "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).

Only the first type of challenge is relevant to a court's determination of whether the arbitration agreement at issue is enforceable. *Id.* at 444-46. As the

Supreme Court explicitly held, "unless the challenge is to the arbitration clause **itself**, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46 (emphasis added).

The Supreme Court reiterated and reinforced the *Buckeye* rule in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), which held that the text of the FAA requires that decisions regarding enforcement of arbitration agreements must be made on the basis of the arbitration agreement alone. The Court first emphasized that "§ 2 [of the FAA] states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* at 70 (italics in original). It then held that the arbitration agreement is severable, and challenges to its enforcement cannot be based on other provisions of the larger contract:

> [A] party's challenge to **another** provision of the contract . . . does not prevent a court from enforcing a specific agreement to arbitrate. [A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.

*Id.* at 70-71 (emphasis added) (quotations omitted).

*Rent-A-Center* and *Buckeye* thus make explicitly clear that "courts [must] treat an arbitration clause as severable from the contract in which it appears." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010). "[T]he validity of the remainder of the contract" plays no role in a court's determination

whether to enforce an arbitration agreement.  *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012).

Accordingly, this Court held in *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) that challenges to enforcement of an arbitration agreement are confined to situations in which "a plaintiff argues that an arbitration clause, standing alone, is unenforceable . . . for reasons independent of any reasons the remainder of the contract might be invalid."  *Id.* at 1000.  "[A] challenge to the validity of an agreement to arbitrate is to be decided without reference to the larger contract."  *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 843 (N.D. Cal. 2012); *see, e.g., M.A. Mortensen Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1157 (8th Cir. 2012) ("In *Rent-A-Center*, the Supreme Court held that a court must enforce a 'specific agreement to arbitrate' despite a litigant's challenges to the contract as a whole or to another provision of the contract.").

### 2. Courts Have Specifically Held That Contract-Modification And Statute Of Limitations Provisions That Are Not Part Of The Arbitration Agreement Are Irrelevant To Enforceability

Following *Rent-A-Center* and *Buckeye*, a host of decisions have specifically held that contract-modification, statute of limitations and other provisions that are not part of an arbitration agreement are legally irrelevant to determinations whether the arbitration agreement is enforceable.  *See, e.g.*, *M.A. Mortenson*, 676 F.3d at 1158 ("Since § 21.2 is the specific agreement to arbitrate . . . only challenges to the

validity of that provision could render the arbitration agreement unenforceable. . . .
The District Court thus correctly concluded that Saunders' challenge to § 21.4 . . .
is irrelevant.").

In *Muriithi v. Shuttle Exp., Inc.,* 712 F.3d 173 (4th Cir. 2013), the Fourth
Circuit reversed a district court ruling that a provision shortening the statute of
limitations to one year rendered a separate arbitration clause unconscionable. *Id.* at
184. As the court stated:

> **The one-year limitations provision is not referenced in the
> Arbitration Clause, but is applicable generally to the Franchise
> Agreement**. . . . Thus, the one-year limitations provision discretely
> answers the question *when* any claim under the Franchise Agreement
> must be brought, whereas the Arbitration Clause is silent on that issue
> and instead addresses the proper forum *where* such claims under the
> Franchise Agreement must be brought. . . .
>
> In view of its gatekeeping function, **the scope of a motion to compel
> arbitration is restricted to consideration of challenges specific to
> the arbitration clause**. . . . Thus, absent a contrary agreement by the
> parties, general contract defenses that are applicable to the entire
> contract, such as the present one-year limitations provision, are
> reserved for the forum in which the dispute ultimately will be
> resolved. . . . **Accordingly, we hold that because Muriithi's
> challenge to the one-year limitations provision does not rely on
> any aspect of the Arbitration Clause . . . the district court erred in
> holding the one-year limitations period unconscionable as part of
> the court's resolution of the motion to compel.**

*Id.* (bold emphases added) (internal citations omitted).

*Philips v. Sprint PCS*, 209 Cal. App. 4th 758 (2012), reached the same result
on the same analysis. The plaintiff had resisted arbitration based on provisions –

including a statute of limitations provision – that were located outside the arbitration clause. *Id.* at 773-74. The California Court of Appeal rejected the argument because it was "a challenge to the validity of the contract as a whole," and under the FAA, "[t]he basis of the challenge must be 'directed specifically to the agreement to arbitrate before the court will intervene.'" *Id.* at 774 (quoting *Rent-A-Center*, 561 U.S. at 71).

Similarly, the plaintiff in *Damato v. Time Warner Cable, Inc.*, 2013 WL 3968765 (E.D.N.Y. July 31, 2013), argued that an arbitration agreement was unconscionable under California law based on contract-modification and statute of limitations provisions set forth in the larger contract. *Id.* at *5-6, *8. The argument was rejected because "[e]ven assuming that [the unilateral right to modify the contract and] such a restriction on the statute of limitations is, in fact, unconscionable, such unconscionability would affect the entire agreement, not just the arbitration clause." *Id.* at *8.

**Dozens** of other courts have likewise followed the Supreme Court rule that enforceability challenges to arbitration agreements cannot be based on provisions elsewhere in the larger contract.[18] This case falls squarely within the rule.

---

[18] *See, e.g.*, *Paduano v. Exp. Scripts, Inc.*, --- F. Supp. 3d ---, 2014 WL 5431320, at *22 (E.D.N.Y. Oct. 27, 2014) (contract-modification provision); *Abreu v. Slide, Inc.*, 2012 WL 2873772, at *4 (N.D. Cal. July 12, 2012) (statute of limitations provision); *Kairy v. Supershuttle Int'l, Inc.*, 2012 WL 4343220, at *9 (N.D. Cal. Sept. 20, 2012) (statute of limitations provision); *Marzano v. Proficio Mortg.*

The contract-modification and statute of limitations provisions are not part of (or even referenced in) the Arbitration Agreement, and are found elsewhere in the TOS, which is the larger contract between 23andMe and its customers. If those provisions were unconscionable under California law – and they are not – the problem would affect the entire TOS, not the Arbitration Agreement alone.

Accordingly, the provisions provide no basis for arguing that the Arbitration Agreement, "standing alone, is unenforceable . . . for reasons independent of any reasons the remainder of the [TOS] might be invalid." *Bridge Fund*, 622 F.3d at 1000. "Because the[ir] alleged defects pertain to the entire contract, rather than specifically to the arbitration clause, they are properly left to the arbitrator for resolution." *Muriithi*, 712 F.3d at 184 (quotations omitted).[19]

---

*Ventures, LLC*, 942 F. Supp. 2d 781, 796 (N.D. Ill. 2013) (fees and costs shifting provision); *Eukor Car Carriers Inc. v. Chemoil Corp.*, 2011 WL 5599729, at *2 (N.D. Cal. Nov. 17, 2011) (limitation of damages provision); *L&M Creations, Inc. v. CRC Info. Sys.*, 2011 WL 1103636, at *7-8 (D. Nev. Mar. 23, 2011) (injunctive relief provision); *Goodwin v. H.M. Brown & Assocs., Inc.*, 2011 WL 820025, at *4 (D. Colo. Mar. 2, 2011) (limitation of damages provision); *Davis v. Global Client Solutions, LLC*, 2011 WL 4738547, at *1-2 (W.D. Ky. Oct. 7, 2011) (limitation of damages provision); *D-J Eng'ring Inc. v. UBS Fin. Servs., Inc.*, 2012 WL 171342, at *4 (D. Kan. Jan. 20, 2012) (contract-modification provision); *Wynne v. Am. Express Co.*, 2010 WL 3860362, at *6 (E.D. Tex. Sept. 30, 2010) (contract-modification provision); *Adler v. Dell, Inc.*, 2008 WL 5351042, at *12 (E.D. Mich. Dec. 18, 2008) (contract-modification provision); *Curry v. Volt Info. Sci., Inc.*, 2008 WL 719214, at *3 (S.D.N.Y. Mar. 18, 2008) (contract-modification provision).

[19] None of the cases cited in the Opening Brief relating to contract-modification and statute of limitations provisions (OB at 42-43) supports a contrary conclusion.

### 3. Plaintiff's Arguments Regarding The Contract Modification And Limitations Provisions Also Lack Substantive Merit

Even if the TOS's contract-modification and statute of limitations provisions were relevant to whether the Arbitration Agreement is enforceable – and they are not – neither provision would pose an obstacle to enforcement.

The contract-modification provision is clearly permissible under California law, and does not render the Arbitration Agreement illusory or unconscionable. As numerous California decisions have held in the arbitration context, the implied covenant of good faith and fair dealing negates any such argument:

> Under California law . . ., even a modification clause not providing for advance notice does not render an agreement illusory, because the agreement also contains an implied covenant of good faith and fair dealing. . . . Where the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings. . . . **The implied covenant of good faith and fair dealing limits the [party's] authority to unilaterally modify the arbitration**

---

*In re Zappos.com, Inc. Customer Data Security Breach Litigation*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012), *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1523 (2012), and *Samaniego*, 205 Cal. App. 4th at 1147, did not address *Rent-A-Center* or *Buckeye*, or even consider the argument that challenges to an arbitration provision that are based on the existence of separate provisions in the larger contract are irrelevant to the court's enforceability determination. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (2003), and *Circuit City*, 279 F.3d at 894, are inapposite because, in addition to pre-dating *Rent-A-Center*, *Buckeye* and *Bridge Fund*, the provisions at issue in those cases were **part of** a standalone arbitration agreement, rather than distinct provisions of a larger contract. *Ingle*, 328 F.3d at 1169-70, 1175, 1179; *Circuit City*, 279 F.3d at 891, 894.

**agreement and saves that agreement from being illusory and thus unconscionable**.

*Casas v. Carmax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 1233, 1237 (2014) (emphasis added; quotations omitted) (reversing trial court's determination that unilateral contract-modification provision was unconscionable); *accord Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1473-74 (2013); *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 707-08 (2013); *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1213-14 (1998); *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1463-65 (2012).[20]

Any argument that the TOS's contract-modification provision renders the Arbitration Agreement unconscionable is also foreclosed by the FAA. As the California Supreme Court recently noted, "the FAA precludes judicial invalidation

---

[20] Plaintiffs' reliance on *Zappos*, 893 F. Supp. 2d at 1065, and *Sparks*, 207 Cal. App. 4th at 1523, to argue otherwise (OB at 42-43), is misplaced. *Zappos* applied federal and Nevada law, not California law. 893 F. Supp. 2d at 1062-63, 1065. Similarly, the single sentence in *Sparks* that an agreement to arbitrate in an employee handbook "is illusory if, as here, the employer can unilaterally modify the handbook" was *dictum*, and supported by citation to cases applying New Mexico and Kansas law, not California law. 207 Cal. App. 4th at 1523. *Sparks* did not mention any of the numerous California decisions that have held that a contract-modification provision does not render an arbitration provision illusory or unconscionable. Not surprisingly, *Sparks* has been rejected by subsequent California appellate decisions. *See, e.g.*, *Serpa*, 215 Cal. App. 4th at 708 n.7 (declining to follow *Sparks* because the court's statement regarding contract modification provisions was *dictum*, and the court "cit[ed] only to out-of-state authority, without further legal analysis, let alone any discussion of *24 Hour Fitness* and its application of the implied covenant of good faith and fair dealing").

of an arbitration clause based on state law requirements that are not generally applicable to other contractual clauses, **such as . . . a unilateral modification clause favoring the nondrafting party**.” *Pinnacle*, 55 Cal. 4th at 245 (emphasis added).

Plaintiffs’ challenge to the TOS’s one-year limitations provision is similarly unavailing. “California permits contracting parties to agree upon a shorter limitations period for bringing an action than that prescribed by statute, so long as the time allowed is reasonable.” *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). “A contractual limitation period requiring a plaintiff to commence an action within 12 months following the event giving rise to a claim is a reasonable limitation which generally manifests no undue advantage and no unfairness.” *Id.*

Numerous other decisions of this Court have held that one-year contractual limitations periods are reasonable under California law. *See, e.g.*, *Janda v. T-Mobile USA, Inc.*, 378 F. App’x 705, 709 (9th Cir. 2010); *Traynor v. Lexington Ins. Co.*, 420 F. App’x 674 (9th Cir. 2011). Indeed, “the weight of California case law strongly indicates that [even a] six-month limitation provision is not substantively unconscionable.” *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001).

Moreover, “the California Legislature itself has expressly recognized that statutory limitations periods are not imbued with any element of nonwaivable

'public policy,' and that private agreements waiving a defense based on the statutes of limitations are valid and enforceable." *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal. App. 4th 1249, 1262 (2013). "By enacting [Cal. Civ. Proc. Code § 360.5], the Legislature has recognized that parties have a contractual right to opt out of the statutorily mandated limitations periods." *Id.*

The fact that such provisions are generally enforced in California contracts, again, requires that they be enforced in arbitration agreements as a matter of federal arbitration law. *See* pages 20-23 above.

The cases cited in support of the Opening Brief's argument that the TOS's one-year limitations provision is unconscionable are wholly inapposite. *Ingle*, *Circuit City* and *Samaniego* were all employment cases, and their holdings specifically rested on that fact. As this Court noted in *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), *overruled on other grounds by Ferguson v. Corinthian Coll., Inc.*, 733 F.3d 928 (9th Cir. 2013):

> In holding substantively unconscionable provisions shortening the time to bring **employment-related** statutory claims, we have been particularly concerned about barring a **'continuing violations' theory by employees**. . . .
>
> Under *Ingle I*, [*Circuit City*], and *Mantor I* . . . [a] one-year universal limitation period is substantively unconscionable when it forces **an employee** to arbitrate **employment-related** statutory claims.

*Id.* at 1077-78 (emphases added).

Similarly, *Samaniego* explicitly stated that "a contractual provision that unilaterally shortens a limitations period to six months, taken alone, does not necessarily render an adhesion contract substantively unconscionable," but "[t]he import of such a clause is quite different **in the context of [] statutory wage and hour claims**." 205 Cal. App. 4th at 1147 (emphasis added).

This is not an employment case. Nor does this case involve any claims that could possibly be subject to a "continuing violations" theory. Plaintiffs' claims are all based upon a single actionable act: their purchase of the PGS in reliance on alleged misrepresentations. *See, e.g.*, *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1192, 1197-98 (2013) (continuing violations theory was inapplicable to UCL claim alleging unfair and fraudulent business practices).

## VI.    CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's Order granting 23andMe's Motion to Compel Arbitration.

Dated: January 5, 2015          ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  _____ */s/ Robert P. Varian* _____
                    Robert P. Varian

*Attorneys for Defendant-Appellee*
**23andMe, Inc.**

## <u>STATEMENT OF RELATED CASES</u>

Defendant-Appellee is not aware of any related cases currently pending in this Court.

Dated:  January 5, 2015        **ORRICK, HERRINGTON & SUTCLIFFE LLP**


By:  _____*/s/ Robert P. Varian*_____
Robert P. Varian
*Attorneys for Defendant-Appellee*
**23andMe, Inc.**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Defendant-Appellee's brief is proportionately spaced, has a typeface of 14 points or more and contains 13,968 words as determined by the Microsoft Word 2010 word processing software.

Dated: January 5, 2015     **ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: _____ */s/ Robert P. Varian* _____

Robert P. Varian
*Attorneys for Defendant-Appellee*
**23andMe, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 5, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 5, 2015  **ORRICK, HERRINGTON & SUTCLIFFE LLP**

By:      */s/ Robert P. Varian*
       Robert P. Varian

*Attorneys for Defendant-Appellee*
**23ANDME, INC.**